## Minnie Levanti, Plaintiff-Appellee, v. Eugene Dorris, Administrator of Estate of Aline Covelli, Deceased, Defendant-Appellant.

### Term No. 51F1.

Opinion filed May 23, 1951.

Released for publication June 22, 1951.

GORDON FRANKLIN, N. C. GARRISON, and DAVID A. WARFORD, all of Marion, for appellant.

LEONARD J. DUNN, of West Frankfort, and HILL, MOORE & HILL, of Benton, for appellee.

MR. JUSTICE BARDENS delivered the opinion of the court.

By this appeal defendant seeks reversal of a judgment entered by the circuit court of Franklin county in favor of the plaintiff for the sum of $8,000. The judgment was rendered on a verdict of the jury for that amount and the jury also returned a special interrogatory to the effect that defendant's intestate was guilty of wilful and wanton misconduct.

On the evening of August 9, 1948, at about seven o'clock, defendant's intestate, Aline Covelli, had borrowed her brother's 1948 Mercury convertible and was driving along state highway 149 in a westerly direction approximately four miles west of the City of West Frankfort. The plaintiff was riding in the car as a guest. At the point where the accident occurred there is a broad curve in the hard road and going westwardly the road curves to the left. At the approximate westerly end of the curve there is a crossroad and at the southwest corner of the intersection with this crossroad is a direction sign supported by two 4" x 4" posts. Approximately three hundred feet east of this intersection was a "crossroad" sign.

On the evening in question, as Aline Covelli approached and entered this curve, going westerly, the right-front and rear wheels of the car left the highway and went onto the shoulder to the right. Thereafter, the car came back onto the highway, went in a diagonal direction across the highway in front of two cars going easterly, ran into and severed a 4" x 4" post at

357

the southwest corner of the intersection above described, then on into a ditch on the south side of the highway where the car went over endwise and came down upon Aline Covelli, causing her death immediately. The plaintiff was thrown from the car into a field and suffered injuries which will be hereinafter described.

Plaintiff filed her complaint against Aline Covelli's administrator, defendant herein. The complaint consisted only of one count and, of course, charged wilful and wanton negligence. Defendant argues three assignments of error, as follows: (1) That the verdict was against the manifest weight of the evidence. (2) That the lower court erred in giving a certain instruction defining wilful and wanton misconduct; and (3) that the verdict is excessive.

As to the contention that the verdict is against the manifest weight of the evidence and that the evidence is not sufficient to support the charge of wilful and wanton misconduct, we need only consider the evidence most favorable to the plaintiff. That evidence was to the effect that when Aline Covelli, who was familiar with this road, entered the curve above described she was driving at the rate of approximately seventy miles an hour. She was driving a new car in good mechanical condition. In addition to being confronted by the crossroad and warning thereof she was also confronted by traffic coming towards her on the hard road. There is corroborating evidence of a high rate of speed from testimony showing that when the Mercury car left the hard road with its right wheels on the right shoulder, the left wheels came up off the ground; that thereafter there was no diminution of speed whatsoever and the car, after crossing the hard road, cut off a 4″ x 4″ post, traveled for approximately 120 feet in a ditch, and then turned over endwise, throwing the plaintiff out of the car and killing the

driver. There is evidence that the brakes were never applied.

■ We are aware, of course, of the decisions holding that a violation of a speed statute or that speed alone and of itself is not grounds or a basis for a wilful and wanton finding and that the failure to apply brakes in and of itself is also not a basis for wilful and wanton finding. *Clarke v. Storchak*, 384 Ill. 564; *Bartolucci v. Falleti*, 382 Ill. 168. It is our opinion, however, that the testimony above outlined, if believed by the jury, was sufficient basis for the jury's verdict when it is considered that the car entered a curve at a high rate of speed with a marked crossroad and warning sign confronting her and with traffic approaching her from the opposite direction at a close enough range to be seen by the driver. In the case of *Clarke v. Storchak*, 384 Ill. 564, where the court held there was not sufficient evidence on which to base a wilful and wanton finding, the speed of the car was 45 miles an hour, and the court says on pages 581 and 582; ''The accident occurred in the daytime on a main highway, where there were no other cars about, and without obstruction of any kind to warn the driver, or circumstances which would require the driver of an automobile to be on his guard.''

■ The second assignment of error pertains to plaintiff's instruction number three. The instruction complained of defines wilful and wanton conduct in part as: ''An act committed under circumstances exhibiting a reckless disregard for the safety of others, such as a failure, after knowledge of impending danger, to exercise ordinary care to prevent it, or a failure to discover the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care.'' The objection urged to this wording is the contention that it allows the jury to find wilful and wanton misconduct based upon ordinary

359

negligence. With this contention we do not agree for the reason that a failure to exercise ordinary care by one who has knowledge of an impending danger does amount to a reckless disregard for the safety of others and is far different than ordinary negligence when there is no such knowledge. The other phrase objected to exacts a different burden than ordinary negligence when it requires a finding of "failure to discover danger through recklessness or carelessness." We find that this language has been used to define wilful and wanton misconduct in numerous reported cases, both in the Supreme and Appellate Courts, some of which are as follows: *Schneiderman v. Interstate Transit Lines*, 394 Ill. 569 at 583 and cases cited. *Brown v. Ill. Terminal Co.*, 319 Ill. 326, 331. *Schmidt v. Anderson*, 301 Ill. App. 28, 39. *Johnson v. Sandberg*, 283 Ill. App. 509, 515. See also *Anderson v. Brown*, 340 Ill. App. 613. We find, too, that the defendant gave two instructions defining wilful and wanton misconduct in the following language: "To make an act wanton, the party doing the act or failing to act must be conscious of his conduct, and though having no intent to injure, must be conscious, from his knowledge of the surrounding circumstances and existing conditions that his conduct will naturally and probably result in injury to another" and, "A wilful or malicious act is one done either with a deliberate intent to inflict injury upon (or, do damage to) another, or with an intentional disregard for the safety of the person or property of another, and with an entire absence of care for the safety of the persons or property of others, such as would show a conscious indifference to consequences."

██ We do not regard the instruction as a model to be followed in like cases in that it uses an example or illustration to explain the meaning of a previous phrase. For purposes of instruction to juries the def-

inition given in *Clarke v. Storchak, supra,* and *Mower v. Williams,* 402 Ill. 486, 490 is preferable. However, we are unable to see wherein it could have misled the jury to the defendant's prejudice, especially so for the reason that other instructions, as above set forth, on the same subject were given at the instance of defendant and were full and explicit on the subject of a wanton act. Furthermore there was no count in this complaint charging ordinary negligence and hence no occasion for confusion based on instructions covering both ordinary negligence and wanton conduct in the same case.

We come now to the third and last assigned error argued by the defendant, namely, that the verdict was excessive. The plaintiff, in addition to the ordinary shock and swelling and bruising, received a comminuted fracture of the left humerus with loose fragmentation. She was in the hospital the first time for a period of ten days where the fracture was treated by means of a parham band and wires and the arm placed in a cast. She was then home for a period of approximately five months and the method of treatment proved unsuccessful in that the broken bone failed to unite; whereupon, she was returned to the hospital for the performance of a bone graft on her arm. This was accomplished by removing a piece of her left shin 4½ inches long by ¼ to ½ an inch wide and grafting it to the humerus by means of pins and bars made of threaded stainless steel and held in place by screws on each end. She also suffered a wrist drop in her left wrist by reason of the necessity of handling the radial nerve in her left arm. The fractured humerus healed successfully and she finally regained normal use of her wrist. She is, however, left with permanent scars; one over her eye; one in her head; one on the anterior surface of the left leg approximately eight inches in length and one-sixteenth to one-eighth inch in width

which is visible either with or without stockings; two scars on the lateral surface of the left arm, one approximately six inches in length and the other 4½ inches; and two transverse scars on the same arm. There is a loss of fatty tissue under the arm scars which leaves a depression or sunken place which will be permanent. Plaintiff's medical and hospital bills and her damages for loss of employment amounted to a little over thirteen hundred dollars. She suffered considerable pain and suffering.

██ Inasmuch as there was some disfigurement, the amount of damages was peculiarly one for a jury's determination. The lower court refused to set aside the verdict. The amount awarded is not so large as to show passion and prejudice. Nothing in the record, called to our attention, was calculated to inflame the jury. We therefore hold the verdict was not excessive.

Finding no reversible error, the judgment should be affirmed.

*Judgment affirmed.*

SCHEINEMAN, P. J. and CULBERTSON, J., concur.