Paul Garner, a Minor, by Louis Garner, his Father and Next Friend, Plaintiff-Appellee, v. Burns Mid-Town, Inc., Defendant-Appellant.

Gen. No. 9,817.

Opinion filed February 20, 1952. Rehearing denied March 25, 1952. Released for publication March 25, 1952.

EARL S. HODGES, of Springfield, for appellant; MAURICE KEPNER, of Springfield, of counsel.

GREEN & HOAGLAND, of Alton, for appellee; KENNETH F. KELLY, of Alton, of counsel.

MR. JUSTICE REYNOLDS delivered the opinion of the court.

The plaintiff, Paul Garner, a minor eleven years of age, by Louis Garner, his father and next friend, obtained a judgment for $5,750 against the defendant, Burns Mid-Town, Inc., a corporation, for personal injuries resulting from burns received by the plaintiff on the premises of the defendant. The defendant appeals from such judgment.

On June 26th, 1950, the plaintiff was riding with one Pete Brown, as a guest in the automobile of Brown, going from Alton, Illinois to Whiting, Indiana. The automobile of Brown, near Illiopolis, Illinois, developed motor trouble. The car was driven to the front of the place of business of the defendant, and upon ascertaining the service wanted, the defendant directed Brown to drive to the rear, where the defendant oper-

ated a repair shop. Brown drove to the rear and parked the car at the point where the injury to the plaintiff occurred. The repair shop had doors on both the north and south sides of the building, but Brown did not drive into the repair shop but stopped his car near the north door, on the outside parking space. One Dan Bednorz, a mechanic employed by the defendant then began work on the car of Brown. The hood was lifted and Bednorz checked the fuel line, the fuel pump and then attempted to start the car by priming the carburetor with gasoline. While priming it with a can of gasoline, the gasoline became ignited, spilling burning gasoline over the hand of Bednorz, igniting the can of gasoline in Bednorz' hand and around the motor. Bednorz, in attempting to get rid of the burning can of gasoline, bumped into the bumper with it, and as he tried to dispose of the can of burning gasoline, threw or spilled it on the trouser leg of the plaintiff, who was standing some two or three feet behind the mechanic, and the gasoline on the trouser leg of the plaintiff blazed up. The plaintiff tried to run and the mechanic Bednorz tackled him, threw him to the ground and put out the fire. The evidence is not clear as to what was done with the blazing can of gasoline, but it was on the ground about two or three feet from the car when the blaze was put out. The plaintiff sustained second and third degree burns on the right leg from the upper thigh to the foot. The seriously burned part of the leg around the knee required a skin graft.

The evidence further shows that Brown told the boy to stay back from the car. Bednorz states that he also told the boy to stand back, but the plaintiff says he does not remember this. The plaintiff did stand around while the work was going on. The evidence shows that he wandered about the premises, went to the front and got himself a soft drink, and that at the time of the flaming up of the gasoline, he was some two or

three feet to the rear of the mechanic. Bednorz had his head down in the car and apparently did not see the plaintiff. There were only three eyewitnesses, Brown, the owner of the car, Bednorz, the mechanic and the plaintiff. There does not seem to be too much dispute as to the facts or the injuries received by the plaintiff.

The appeal raises the following questions: (a) Was the plaintiff an "invitee," or was he a mere licensee on the premises of the defendant? (b) Did the court err in giving an instruction that took into consideration the ability or inability of the plaintiff to work and transact business after he reached the age of twenty-one years? (c) Did the court err in refusing the instruction offered by the defendant, defining a "licensee?" (d) Did the court err in permitting the introduction of colored pictures of the plaintiff's leg? (e) Was the judgment excessive?

Taking up first the question of the status of the plaintiff at the time of the fire, it is clear that the plaintiff was a guest of Pete Brown, the owner of the automobile. When he inquired about repairs to his car, Brown was directed to drive to the rear where the repair shop of the defendant was located. One of the cases relied upon by the defendant was that of *Milauskis v. Terminal Ry. Ass'n*, 286 Ill. 547. In that case the court said: "The distinction between a visitor who is a mere licensee and one who is on the premises by invitation turns largely on the nature of the business that brings him there rather than on the words or acts of the owner which precede his coming. . . . If a person is upon the premises of the owner by an invitation, expressed or implied, and not by mere permission, then such owner owes him a duty to exercise ordinary care to keep the premises in a reasonably safe condition." (*Purtell v. Philadelphia and Reading Coal and Iron Company*, 256 Ill. 110.) "To come under

165

an implied invitation as distinguished from a mere license, the visitor must come for a purpose connected with the business in which the occupant is engaged or which he permits to be carried on there. There must be at least some mutuality of interest in the subject to which the visitor's business relates, although the particular thing which is the object of the visit may not be for the benefit of the occupant.''

The materiality of the question of whether plaintiff was an invitee or licensee arises from the fact that a heavier duty of care is placed on the owner of premises toward an invitee than toward a licensee or trespasser. Toward an invitee the owner of premises must use reasonable care and caution in keeping the premises reasonably safe for use by such invitee; while toward a licensee no duty is owed by such owner, except not to wantonly or wilfully injure him. (*Pauckner v. Wakem*, 231 Ill. 276; *Milauskis v. Terminal Ry. Ass'n*, 286 Ill. 547.) To be upon premises by an implied invitation means that the person is there present for a purpose connected with the business in which the owner of the premises is engaged, or which he permits to be carried on. (*Milauskis v. Terminal Ry. Ass'n*, 286 Ill. 547.) It is frequently a difficult question to decide whether the injured person is a licensee or invitee. The test is said to be whether one goes upon the premises of the owner by invitation to transact business in which the parties are mutually interested. (*Pauckner v. Wakem*, 231 Ill. 276.) As was said in *Purtell v. Philadelphia and Reading Coal and Iron Co.*, 256 Ill. 110: ''When a person is upon premises by implied invitation, it means he is there for a purpose connected with the business in which the owner of the premises is engaged or which he permits to be carried on.'' *Ellguth v. Blackstone Hotel, Inc.*, 408 Ill. 343. In a case somewhat similar to this case, *Zoloth v. Wacker-Wabash Corp.*, 328 Ill. App. 564, the plaintiff was a guest of

166

one Weil. Weil drove his car on the ramp of the defendant for parking. Weil got out and an attendant, an employee of the defendant, got in. The plaintiff remained in the car. The ramp was some distance higher than the surrounding ground, with no guard rail or warning signs. After sitting there for some time, the plaintiff got out of the Weil car and fell from the ramp, injuring himself. The Weil car was still on the ramp, with the employee of the defendant in the driver's seat. The court in that case said: "The plaintiff was lawfully at a place which defendant used in connection with his business. Under these circumstances, plaintiff as Weil's guest was in the position of a patron properly on the premises. . . . Since Weil, as an invitee, was directly induced to drive upon the ramp and surrender possession of his car there, by the defendant, plaintiff also became an invitee through Weil."

■■■ Applying the law of these cases to the present case, it seems clear that the plaintiff was an invitee. He was the guest of Pete Brown, and the invitation to the owner of the car impliedly extended to his guest in the car. Since Brown was clearly an invitee, the plaintiff as the guest of Brown, also became an invitee. The fact that the boy was told to stand away from the mechanic, did not in itself change his status. To change his status from that of an invitee to a licensee would require more positive action on the part of the defendant. There is no evidence that this happened.

■■■ The submission of the instruction that would have the jury consider the earning capacity of the plaintiff after he reached the age of twenty-one years is assigned as error. The defendant relies upon the case of *Illinois Iron and Metal Co. v. Weber,* 196 Ill. 526, where a similar instruction was held to be bad. In that case the court held there was no evidence on which to base such an instruction. In this case the doctor who

performed the skin graft testified that the area on which the skin was grafted would permanently be more susceptible to heat and cold and abrasions, than normal skin. Here there was testimony on which to base the instruction. We can see no error in this instruction, in view of the doctor's testimony as to the permanent nature of the injuries.

██ The defendant assigns as error the refusal of the court to give the tendered instruction defining a licensee. The defendant insists that the principal theory of its defense was that the plaintiff was a licensee and not an invitee. The cases cited by the defendant are abstract opinions, but they do make this rule, that is, that there must be a basis upon which to rest such a defense. Here the complaint charges negligence. The defendant files a general answer to this charge. There was no issue, under the pleadings of wilful or knowing negligence. The defendant did submit and there were given two instructions as to an invitee. Considering the instructions as a whole, we think they properly stated the law, and we are of the opinion that there was no reversible error in the refusal to give this instruction.

██ The defendant also assigns as error the admission of colored pictures of the boy's leg, taken about two months after the injury. If there was any error in the admission of these pictures, the fact that the boy exhibited his injury to the jury at the time of the trial, so that the jury had the opportunity to see for itself the exact nature and extent of the injury, would cure this.

██ ██ This leaves the question as to the amount of the judgment. The defendant claims it is excessive. We have repeatedly held that damages awarded to a plaintiff in a personal injury suit will not be set aside unless so palpably excessive as to indicate some improper motive on the part of the jury. There is noth-

168

ing before the court to indicate any improper motive on the part of the jury, and since this finding is so exclusively the province of the jury, we do not feel disposed to interfere. The judgment of the circuit court was correct and should be affirmed.

*Affirmed.*