Daniel Eizerman, Appellee, v. Abe Behn, Milton Behn, and Robert Behn, Individually and as Partners Doing Business as Chicago Used and New Laundry Equipment Company, Appellants.

## Gen. No. 46,438.

First District, Second Division.
February 21, 1956.
Released for publication April 3, 1956.

264

 

Irving G. Zazove, of Chicago, for appellants; Edward Wolfe, of Chicago, of counsel.

Louis G. Davidson, of Chicago, for appellee; Louis P. Miller, and Charles D. Snewind, both of Chicago, of counsel.

PRESIDING JUSTICE McCORMICK delivered the opinion of the court.

This is an appeal by the defendants from a judgment entered in the Superior Court of Cook County for the plaintiff in the sum of $70,000. The action was brought by plaintiff to recover damages for personal injuries, and was tried before a jury. Motions for judgment notwithstanding the verdict and for new trial were denied by the trial court.

The defendants contend that the court erred in denying their motion made at the close of all the evidence for a directed verdict and in not entering judgment in their favor notwithstanding the verdict; that the verdict is against the manifest weight of the evidence; that the trial court erred in its rulings on the admis-

sion of evidence and in its failure to sustain various motions of the defendants for a mistrial, and that the defendants were denied a fair trial due to the conduct of counsel for the plaintiff.

The case grew out of an occurrence at the place of business of the defendants, who were engaged in the business of buying, selling, repairing and reconditioning secondhand commercial laundry equipment, as well as selling new laundry machinery. The plaintiff, together with a partner, was engaged in the laundry business, and on the day of the accident was at the defendants' place of business inspecting a used washing machine, the purchase of which he and his partner were considering.

Numerous photographs as well as oral testimony in the record describe the washing machine in question. It was, as appears from the evidence, a three-door, all metal machine weighing approximately three tons. Its outer metal cylinder was designated as the "shell," and was equipped with three sliding doors. This outer shell is stationary. Inside the outer shell is an inner cylinder which rotates. Between this cylinder and the outer shell there is only about an inch or two of space. The machine is equipped with a purely mechanical, manual brake.

If the machine was connected and wired according to the original design, the current would pass from a wall switch to a magneto box on the back of the machine. From the magneto box the current would be carried to a control box located on the extreme right of the washing machine, and from there it would then pass through a conduit to a motor located on the top of the machine.

In order to start the machine when so connected, if the machine was in good condition, the doors of the shell must be closed in order to complete the electrical circuit through the control box. The doors are

equipped with a "locking bar" so that the door to the extreme left must be closed before the center door can be closed, and the center door must be closed before the door to the extreme right can be closed. On the extreme right of the right shell door and near its top is a finger-like "cam." This cam operates in connection with a hollow peg-like structure or casting which projects from the left face of the control box. A button protrudes from the end of this peg or casting and is held in its protruding position by a spring in the center of the hollow peg. The hollow peg and button are designated as the "door switch." When the right door of the shell is closed, the cam on the door presses against and holds the door switch button in, and thus completes one of the circuits through the control box.

Attached to the manual hand brake by means of a metal spoke is a semi-circular, eccentric moon-shaped metal casting called the "brake cam." On the right face of the control box is a hollow finger-like metal tube extending outward. This hollow tube is equipped with a button supported by a spring. When the hand brake is in a "down" position, this button is depressed by the eccentric moon-shaped casting of the hand brake and the circuit is opened. When the brake is moved upwards and in a "released" position, the moon-shaped cam releases the button and a second circuit is completed within the control box.

The third circuit which is necessary to complete in order to start the machine is designated as the "starter," "manual," and "inching switch." It is a button on the left face of the control box, which is held in an outward position by a spring within the control box. The switch is operated manually, and the switch button must be pushed and held in place before the cylinders can be turned by electric power. Once the machine is started it is no longer necessary to hold this button depressed.

270

In order that articles to be laundered may be put into, or removed from, the compartments of the cylinder, the apertures of the shell and the cylinder must coincide. This is accomplished by slowly moving or "inching" the inner cylinder by electric power or by hand. If the machine was connected in the way described, it could only be done electrically when the shell doors were opened by placing and holding both the button of the door switch and the "inching" button in the "in" position, and at the same time compressing the two levers of the brake, by the manipulation of which the apertures of the shell and cylinder may be brought into apposition. Such procedure is called "spotting the cylinder." The inner cylinder may also be "inched" by hand.

The plaintiff's theory of the accident is that at the time of the injury there was no magneto box on the machine and the motor of the machine was connected by a cable directly to the electrical inlet of the defendants and was started by pulling a wall switch located some distance from the machine. If the machine was so connected, turning on the electrical power would immediately cause the cylinder to rotate.

The defendants' theory is that at the time when the machine was received by them there was no magneto control box attached to it and that they had at some time prior to the occurrence attached such a box, and wired the control box so that the rotation of the cylinder was started or stopped by engaging or releasing the brake, which was operated by moving the manual brake handle up or down.

On the day of the occurrence the plaintiff, together with his partner, was being shown the machine by the defendants, and plaintiff's testimony was that the hand brake was loosened and they pushed the cylinder around by hand; that the defendants then attached an electric cable directly to the motor of the machine,

took it to the back of the shop and the machine was started; that after it had run for a short period defendant Abe Behn told one of his employees to go back and pull the switch, which he did, and the machine then stopped; that the plaintiff had put his hand into the machine to feel for loose rivets and that while he was so engaged someone pulled the switch in the rear of the shop and the cylinder started rotating and crushed his arm. The defendant Abe Behn called "pull the switch." The switch was pulled and the machine was stopped, and wrenches were used to remove plaintiff's arm from the machine.

The testimony of the defendants' witnesses is to the effect that the electric cable was connected to the machine through the magneto control box before the plaintiff came to the defendants' place of business; that when the machine was so connected the electrical contact which would start the machine could be made with the brake handle; that the machine, while the defendants were there, was so started, and that after it was stopped the plaintiff reached into the machine with his right hand looking for loose rivets and at that time, with his arm in the machine, he reached up with his left hand and moved the brake handle, starting the machine which caught his arm between the shell and cylinder of the machine.

There is evidence in the record that the plaintiff was right-handed. The plaintiff introduced evidence that the button which should have protruded out of the hollow tube of the door switch was compressed and held back by corrosion so that it was inoperative; that the spring which held out the button of the starting switch was broken and the button was either missing or had dropped back so that it could not perform any function, and that therefore the machine would be started with the doors open and by one-handed operation. On the other hand, testimony on behalf of the defendants was that these buttons would not at any

time, even when the machine was new, affect the use of the brake handle alone in starting or stopping the machine.

The evidence with respect to the occurrence of the accident is sharply conflicting and cannot be reconciled.

The defendants urge that there was a variance between the allegations of the plaintiff's complaint and the evidence offered.

■■■■■■ In the complaint the plaintiff charged that the defendants "carelessly and negligently failed to exercise ordinary care in the operation, management and control of the said washing machine" and "carelessly and negligently started the said machine in operation without warning the plaintiff of their intention to do so"; and these charges are followed by charges of specific negligent acts on the part of the defendants. Here there is an allegation of general negligence which standing alone would be sufficient to support the verdict without any allegation setting out the particular acts upon which the general charge of negligence is predicated. Chicago City Ry. Co. v. Jennings, 157 Ill. 274; Church v. Adler, 350 Ill. App. 471. Counsel objected to evidence offered by the plaintiff to the effect that if the machine was properly wired it was necessary, before the machine could be started, to close the doors of the shell and the cylinder, on the ground that the condition of the machine was not important to the lawsuit and was not an issue under the pleadings and was a variance. Such proof was competent under the general charge of negligence. The rule is not changed by also charging specific negligence. In any case, the defendants in their motion for a new trial did not specifically point out the particular variance, nor indicate where the complaint failed to conform to the proof, so that the plaintiff would have the opportunity of amending his declaration to meet the objection. By reason of such omission the defendants can-

not now complain of the ruling of the trial court. Pickett v. Kuchan, 323 Ill. 138. The plaintiff states in his brief that under his theory of the case the defendants were guilty of actionable negligence in connecting the power directly to the motor, in causing the machine to be started without notice to the plaintiff when they knew he was examining the machine, and in permitting the source to be unguarded so that the machine could be so started, and states that even if the jury had believed the contention of the defendants that they rewired the control box so that the cylinder could be set in motion solely by the use of the brake, the defendants still were guilty of actionable negligence because the rewiring would eliminate the "two-handed operation" and permit the cylinder to be moved by electrical power by the use of the brake handle alone when the shell doors were open. The defendants contend that such contention was not made in the trial court and the plaintiff's theory here is not the theory on which he proceeded in the trial court. We do not agree with defendants' contention. Under the pleadings, and particularly under the issue joined on the allegation of general negligence, the evidence in the record would permit the jury properly to draw such an inference, and upon examining the argument made by counsel to the jury and the instructions given by the court, it would appear that this theory was properly before the jury in the trial of the case.

The defendants argue that the court erred in failing to direct a verdict for the defendants at the close of all the evidence, and they also argue that the verdict was against the manifest weight of the evidence.

The evidence in the record is voluminous. The trial occupied approximately eighteen days, and the abstract in the case contains 878 pages. The evidence was in sharp conflict, and it would serve no good purpose here, and would extend this opinion to an unconscionable length, to further detail the testimony.

We have examined the testimony carefully and in our opinion there is sufficient evidence in the record to support the verdict of the jury. The jury apparently believed the witnesses of the plaintiff. This court cannot substitute its judgment for that of the jury in passing on the weight and credibility of conflicting evidence. People v. Bond, 281 Ill. 490; City of Monticello v. LeCrone, 414 Ill. 550. Questions of negligence, due care and proximate cause are ordinarily questions of fact for the jury to decide. Ney v. Yellow Cab Co., 2 Ill.2d 74. In Roller v. Kurtz, 6 Ill.2d 618, the Supreme Court said:

"Where the evidence is conflicting, the witnesses on opposite sides having testified to opposite conclusions, it is the peculiar province of the jury to determine which set of witnesses was right and which was wrong. A decree approving the conclusion of the jury under such a state of the evidence will not be disturbed on appeal. (Sterling v. Dubin, 6 Ill.2d 64; Mitchell v. Van Scoyk, 1 Ill.2d 160.) As we observed in Carney v. Sheedy, 295 Ill. 78, the rule is that 'where there is a contrariety of evidence and the testimony by fair and reasonable intendment will authorize the verdict, even though it may be against the apparent weight of the evidence, a reviewing court will not set it aside.' The reason for such rule is found in the advantages possessed by the trial judge and jury, who see the witnesses and hear their testimony. The jury may and should take into consideration the demeanor of the witnesses and many other factors determining the weight and credibility to be given the testimony. The opportunity to observe and consider such matters is not available to a court of review, which only reads a transcript of the testimony."

The verdict was not against the manifest weight of the evidence and the trial court did not err in overruling defendants' motion for a directed verdict at the

close of all the evidence, and properly overruled their motion for a new trial.

The defendants at the commencement of the trial made a motion asking the court to permit the defendants to set up the machine in a corridor on the main floor of the County Building, and in support of their motion they explained to the court that the machine was so large and heavy that it could not be moved by an elevator to the courtroom. The defendants also moved to have the jury view the machine in operation, and also to present before the jury some motion pictures which were taken of the machine some four years after the accident showing the machine in action being operated by certain agents of the defendants. The court overruled all of these motions.

The defendants here argue that the jury should have been permitted to have had an opportunity to observe the machine while it was in operation, either by a view of the machine or by seeing motion pictures thereof during the trial, in order that the defendants might show that the machine could be started and stopped by the use of the hand brake alone. The principal issue in the case was as to whether or not at the time of the accident the electric cable carrying current to the machine was connected through the magneto control box or directly to the motor. It was admitted that if the cable was connected directly to the motor the machine could only be started and stopped through the wall switch. The defendants contend that if the jury saw the machine being operated it would be seen that it could be started and stopped by the use of the brake handle alone. There is no dispute that the machine could be so wired that the electrical impulse to operate it could be transmitted by the manipulation of the brake handle, and it is the defendants' contention that at the time of the accident it was so wired. The plaintiff contends that at the time of the accident the magneto box was not on the machine and conse-

quently it could not be operated in the manner that the defendants' witnesses say it was and that the machine at the time of the trial and at the time the motion pictures were taken was not in the same condition that it was at the time of the accident. On this question the evidence is irreconcilably conflicting. The plaintiff also contends that if the machine were properly wired and all the buttons and switches incorporated therein were operating, the use of the brake handle alone would have no effect in setting in action the electric motor which motivated the machine.

 Twenty-nine photographs of the machine were introduced in evidence and many pages of the record are devoted to testimony giving a detailed description of it. On both sides there is expert evidence concerning and detailing its operation. The same rules which are applicable to a view of the machine are equally applicable to the exhibition of the motion pictures of it under the conditions of the instant case. It is a matter within the sound discretion of the trial judge and the exercise of that discretion will not be interfered with in the absence of a clear showing of abuse. Zipkie v. City of Chicago, 117 Ill. App. 418; City of Springfield v. McCarthy, 79 Ill. App. 388; Metropolitan West Side Elevator Co. v. Goll, 100 Ill. App. 323; City of Chicago v. McShane, 102 Ill. App. 239. It is impossible to see in what respect the jury's observation of the machine in action would aid them in their determination of the issues before them. The principal issue in the case was not whether the machine could be run by the hand brake alone, but was whether or not at the time of the accident the machine was so wired and connected that it could be so operated. All that a view of the machine or exhibition of the motion pictures would show was that at that time the machine was so wired and connected that it could be motivated by the brake handle. Under the circumstances the pictures would be of no value for clarifica-

277

■■■■■■■■■■

tion or for demonstrative purposes. The court did not abuse its discretion in overruling the motions and offers of the defendants.

■■ The defendants' counsel, during his cross-examination of one Platz, a witness for the plaintiff, in an endeavor to lay a foundation for impeachment, questioned him with reference to certain contradictory statements made by him in a deposition taken prior to the trial. The witness admitted that to certain of the questions he had made the answers in the transcript, but that he was mistaken as to certain of the things about which he testified, and as to certain others of the questions and answers he stated that he did not remember as to whether or not he made the recorded answers. Defendants' counsel then asked the witness questions with reference to the latter's conversation prior to the trial with the counsel for the plaintiff concerning the mistakes in the deposition, and to all of those questions the court sustained plaintiff's objections. There is no question that when a witness has admitted that some of the answers which he made on a prior occasion were contradictory of his testimony on the stand opposing counsel has the right to ask the witness to explain the discrepancy, and he is allowed considerable leeway in such cross-examination. However, the extent of such cross-examination rests in the sound discretion of the court and will not be disturbed unless it is abused and the party so cross-examining shows that he was thereby prejudiced. People v. Moran, 378 Ill. 461. The questions here asked were improper in form, and it does not appear that the defendants were prejudiced by the ruling. An examination of the witness as to what discussions he had with the attorney for the plaintiff with reference to his testimonial mistakes would not be proper.

During the trial, one of defendants' witnesses, Louis Sheffey, who at the time of the occurrence was defendants' employee, testified that the electric power was

not connected to the motor directly, but through the magneto control box and that he had connected it thereto shortly before noon on the day of the accident; that he had seen the plaintiff pull the brake handle causing the machine to start. On cross-examination the plaintiff laid a proper foundation for the introduction of prior contradictory statements alleged to have been made by the witness. The plaintiff then on rebuttal called a witness who testified to certain conversations with Sheffey, the first occurring in front of the washing machine after the injured plaintiff had been taken away, the other at the hospital where the plaintiff was. In these conversations Sheffey said that he was sorry that he put on the switch (referring to the wall switch), but that he did not know anything was hooked up to it; that he put it on because he was working on an air compressor; that he didn't realize that a man was going to have his hand injured.

Counsel for the defendants objected to the admission of both conversations and here contends that the evidence adduced from the impeaching witness might have been used by the jury to prove the liability of the defendants and that the admission of these statements which could be used as substantive evidence was improper because they were not part of the res gestae and were beyond the scope of the defendants' agent's authority. Counsel for the plaintiff at the time when objections were made clearly indicated to the court that he was asking for the introduction of these statements solely for the purpose of impeachment.

 The statements of plaintiff's witness as to the conversation admitted in evidence certainly flatly contradicted the testimony of the witness Sheffey given on the stand, and consequently were properly admissible for impeachment. People v. Perri, 381 Ill. 244. It is a well settled rule of law that evidence which is competent for one purpose does not become incompetent because the jury might improperly consider it

in some other capacity for which it could not properly be admitted. The opponent of the evidence may, if he so wishes, ask for an instruction confining the evidence to its legitimate sphere; and if he fails to so act, he is deemed to have waived any objection he may have. Wigmore on Evidence, 3rd Ed., vol. I, pp. 301–302; Jamison v. People, 145 Ill. 357, 379; Chicago R. I. & P. Ry. Co. v. Clark, 108 Ill. 113, 117. Here the evidence could be properly used for the purpose of impeachment. It could not be properly used as substantive evidence to establish liability of the defendants. Counsel asked for no instruction limiting the inferences which could be drawn from it by the jury. The trial court ruled properly.

Counsel for the defendants alleged that plaintiff's counsel during the time he was examining a witness was purportedly reading notes, and demanded that counsel for the plaintiff take the stand and bring his notes with him, stating that he had a "right to have him tell this jury what he was writing and what he was reading from, if he was reading from anything." The court refused to order counsel to the stand, and the defendants here urge that the court was in error since it has been held that there is no rule of law which expressly excludes attorneys from appearing and testifying.

At the time in question, counsel for plaintiff was cross-examining the witness with reference to certain alleged contradictory statements made by him out of court which were, as far as anything appears in the record, oral. In order to lay a foundation for impeachment it was proper for counsel to ask the witness as to whether or not he had made the statement. The briefs filed herein disclose no case, nor do we know of any, which would justify the calling of counsel for a party to the witness stand to testify concerning the contents of a note which he used in cross-examining the witness. The analogous question of the

280

requirement of an attorney to disclose his "work product" in discovery interrogatories was raised in Hickman v. Taylor, 329 U. S. 495. In that case the attorney was asked to produce statements given to him by certain witnesses, and the district court held that the statements must be produced. The Circuit Court of Appeals (153 F.2d 212) reversed the district court, holding that the work product of an attorney was privileged. The Supreme Court (329 U. S. 495) sustained the Circuit Court of Appeals, but held that the statements of a witness to an attorney in preparation for litigation are not privileged under the attorney-client privilege, nor are they subject to discovery as a matter of right without a showing of good cause by the interested party, as provided for by the Federal Rules, and that as to the oral statements made to the attorney, no showing of good cause could be made which would, on discovery procedure, require a disclosure of such statements. The Supreme Court said:

"Historically, a lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his client. In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways—aptly though roughly termed by the Circuit Court of Appeals in

this case as the 'work product of the lawyer.' Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. . . . The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served."

Rule 17 of the Illinois Supreme Court [Ill. Rev. Stats., 1953, ch. 110, § 259.17], which was in effect at the time when this suit was tried, provided that memoranda, reports or documents made by or for a party in preparation for trial or any privileged communications between any party or his agent and the attorney for the party were not subject to discovery procedure. Rule 19—5 in effect January 1, 1956 [Ill. Rev. Stats., 1955, ch. 110, § 101:19—5] restates the rule and adds that such matters are privileged against discovery. There is no provision in the rules for exceptions on good cause shown comparable to the Federal rule. This rule is broader than the rule laid down in Hickman v. Taylor, supra. See Walker v. Struthers, 273 Ill. 387; Chapman v. Gulf, M. & O. R. Co., 337 Ill. App. 611. Even under the narrower rule as laid down in the Hickman case there could under the circumstances be no requirement to have the document in question produced in a discovery proceeding, and much less on demand in the trial of the case.

In the case before us the defendants went much further and sought to have counsel for the plaintiff take the stand and testify with reference to a memorandum which was a part of his "work product." The defendants had no right to demand that the plaintiff submit to them a memorandum such as this either through a discovery deposition or during the trial, and to seriously contend that an attorney should be compelled by the court to take the stand

282

and testify not only as to the contents of the memorandum but as to what he was doing with it raises an extraordinary and heretofore unheard of proposition. In support of their contention, the defendants cite United States Brewing Co. v. Ruddy, 203 Ill. 306, in which case the plaintiff called the attorney to the stand and asked him as to whether or not in a conversation with one Jansen he had not offered to pay Jansen, if the latter would make a statement favorable to the defendant. The attorney denied that he had made such an offer. He made an objection to the question, but no ruling was made thereon. The attorney then made a detailed statement of the conversation between himself and Jansen, which had taken place in the presence of one Lebbin. The plaintiff then called Jansen and Lebbin to the stand, and over objection they both testified that the attorney had offered to pay the witness Jansen for the statement. The court held that the testimony of Jansen and Lebbin should have been admitted because they were not being offered for the purpose of contradicting the attorney who was the witness of the plaintiff and consequently vouched for by him, but they were used solely to testify to a different version of the conversation as narrated by the attorney. This case of course has no application to the matter before us. The court in the instant case was correct in its ruling.

 After the cross-examination of Sheffey, the defendants on redirect examination offered in evidence a written statement taken from him at the office of the defendants' counsel a week prior to the trial of the case, which statement supported the testimony which he gave on direct examination. The court refused to admit the statement and counsel here contends that in so doing the trial court erred. This objection is so frivolous that it scarcely merits attention. The rule is well established in Illinois that where a

witness has been impeached by showing that he made statements out of court which contradicted his testimony on the stand, evidence of other previous statements which agree with the witness' testimony are not competent. Reavely v. Harris, 239 Ill. 526; Chicago City Ry. Co. v. Matthieson, 212 Ill. 292. The only exception to this rule is that where the attack by inconsistent statements may be interpreted as a plan to give false testimony or to show that the primary witness is biased or has some other motive to falsify, proof of his consistent statements made prior to the time the plan or contrivance was concocted and when the event was recent and his memory fresh should be received in support of his testimony. Waller v. People, 209 Ill. 284. In any case such evidence is only properly offered after the contradictory statement has been received in evidence. None of these conditions existed here and the court's ruling was proper.

██ ██ Defendants argue that the court erred in admitting evidence on the part of the plaintiff that the machine in question was delivered to the defendants on the day of the accident by the Chicago State Hospital, and that the question as to the date of the delivery of the machine was not properly an issue to be considered by the jury. However, one of the defendants, called as an adverse witness, had testified that the machine had been delivered a long time prior to the date of the accident, and subsequently there was testimony on the part of the defendants that the magneto control box was not on the machine at the time when it was received but was subsequently attached and the machine was rewired. Such evidence was clearly competent, and in any case the defendants on cross-examination brought out that the machine was delivered on August 12, 1949, the date of the accident, so that even if there had originally been any error in the admission of the evidence it was cured by the cross-examination of the defendants. Porter

284

v. Terminal Railroad Ass'n of St. Louis, 327 Ill. App. 645.

Counsel for defendants made numerous other objections to the rulings of the court on the introduction of evidence. We have carefully examined them and find no error.

■■■ The defendants also urge that the court erred in refusing to sustain their motion for a mistrial because one of the witnesses for the plaintiff, his partner, while testifying and describing the injuries to the plaintiff wiped his eye as though he were crying. The court properly denied the motion of the defendants. Blachek v. City Ice & Fuel Co., 311 Ill. App. 1. Nor did the court err in refusing to allow the other motions of the defendants for a mistrial.

Defendants here also contend that the counsel for the plaintiff was guilty of prejudicial misconduct dur-..ıg the course of the trial and in his argument to the jury.

■■■ The trial abounded in instances of side remarks of counsel which were not of a character which would be proper in the trial of a lawsuit. Counsel for the defendants in his argument to the jury went outside the record in appealing for sympathy for his clients, and laid great stress upon their poverty and the impossibility of their paying a large judgment. That such remarks were improper is something which is known to the most inexperienced trial lawyer. Counsel for the defendants is not inexperienced. Nor can we by any stretch of the imagination assume that he did not know what he was deliberately doing. Counsel for the plaintiff responded to this argument, calling attention to the possibility of a discharge in bankruptcy or requirement of a remittitur.

In support of their contention, the defendants call the attention of this court to the fact that in two cases recently decided in this court we reversed and remanded because of counsel's misconduct (Vujovich v.

Chicago Transit Authority, 6 Ill.App.2d 115; Baratta v. Chicago, R. I. & P. R. Co., 7 Ill.App.2d 17). In each case the misconduct on which the court reversed was that of counsel for defendants in the case before us. In the latter case, in criticizing counsel for the plaintiff (counsel for the defendants here), the court said that throughout the trial he "indulged in prejudicial and inflammatory remarks addressed to defense counsel, to the court, to witnesses, and to the jury. . . . Defendant's counsel and the court were incessantly interrupted. . . . Throughout the trial abusive and sarcastic remarks were directed to defendant's counsel." The same conduct on the part of counsel for defendants appears in the record before us. The remarks of counsel for the plaintiff in response to the constant onsets made by his opponent were mild, and the jury were properly and fully cautioned in the instructions. Counsel for the defendants also cites in support of his contention Crutchfield v. Meyer, 414 Ill. 210, in which case he was counsel for the appellant. In that case the court, concerning misconduct of counsel, said:

"A reading of the record reveals a decided lack of propriety in the conduct of the trial of this case in respect to argument of counsel. Counsel for both plaintiff and defendants were guilty of improper remarks in addressing the jury in final argument. We are in agreement with the Appellate Court that a party can have no just ground for complaint on account of remarks improper in themselves which are necessitated by like remarks on the other side. (Crutchfield v. Meyer, 347 Ill. App. 315.)"

These cases would seem to indicate a pattern in the trial of a lawsuit on the part of counsel for the defendants. A trial properly conducted is a dignified procedure. Counsel in the case are officers of the court and owe a duty to the court, to opposing counsel, to the cause of justice and to themselves. Often

in the heat and fervor of a sharply contested trial these standards are forgotten. Too often they are not only forgotten but completely disregarded and dragged in the mire. Objections properly made are addressed to the court and counsel is entitled to state his reasons for his objections, but an inflammatory statement accompanying each objection, apparently made solely for the purpose of prejudicing the jury, is improper. Abuse of opposing counsel and of the court has no proper place in a trial. All of these matters rest within the control of the trial court, and the trial court has the power and duty to preserve decorum. The trial court can and should institute contempt proceedings against recalcitrant counsel and impose either a fine or jail sentence. In Walsh v. Chicago Rys. Co., 303 Ill. 339, the court says:

"Whether or not an objection should be sustained to remarks made in argument by an attorney in the trial of the case and whether his objectionable remarks should be held to be error may depend upon the preceding argument of opposing counsel."

See also Kenna v. C. H. & S. E. R. R. Co., 284 Ill. 301; Plambeck v. Chicago Railways Co., 294 Ill. 302; Reinmueller v. Chicago Motor Coach Co., 341 Ill. App. 178.
■■■■ If a reviewing court would reverse under circumstances such as are here presented to us, it might encourage counsel with a weak case to attempt to so obfuscate the record that the trial court would be compelled to withdraw a juror or risk reversal. This certainly would not be in furtherance of justice. Counsel in the case before us apparently followed the same provocative pattern used in previous trials. The purpose of a trial is to attempt under the rules of law to elicit facts for the consideration of the jury from which they may arrive at as close an approximation of the truth as is humanly possible. The test laid down in Crutchfield v. Meyer, supra, is: "The questions to be

determined are, therefore, whether the improper argument was of such a character as was likely to prejudice the defeated party, and if so, was the verdict so clearly right that a new trial ought not to be granted because of such prejudicial argument." In its opinion reversing the case the court found that the jury was improperly instructed. In West Chicago St. R. Co. v. Annis, 165 Ill. 475, the court said:

"It is . . . a matter resting in the sound discretion of the trial judge to say when, under all the circumstances of the case, and in view of the counter remarks which may be made and the temper and character of the jury, whether a new trial should be granted or not, and unless it satisfactorily appears from the record that the trial court has abused its discretion in this regard courts of review cannot interfere."

In Mrdalj v. Public Service Co., 308 Ill. App. 424, the court said:

"'. . . However, it should be borne in mind that it is the presumption of law that jurors are intelligent, honest, fearless and just. Courts are not justified in assuming that the mind of the jury is of such plastic and unreliable material as to at any unjustified word of debate neglect the instructions, abandon the evidence and disregard their oaths.'"

See also County of Jackson v. Wayman, 369 Ill. 123.

In this case, considering the whole record, the defendants were not deprived of a fair trial and the verdict reached by the jury on the evidence presented to them was a proper verdict. The trial court did not err in its ruling.

■■ Counsel argues that the damages awarded to the plaintiff are excessive. The plaintiff, who was a man 48 years of age at the time of the accident and prior thereto was in good health, lost an arm which was amputated about 3½ inches from the shoulder. Because of the nature of the amputation it was the

288

opinion of a physician that·he would be unable to be fitted with a properly functioning artificial arm. There was evidence in the record as to a present and prospective loss of earnings on the part of the plaintiff, in addition to the medical and hospital expenses. The testimony shows that plaintiff endured severe pain and suffering. In Holsman v. Darling State Street Corp., 6 Ill.App.2d 517, we said:

"We have repeatedly held that damages awarded to a plaintiff in a personal injury case will not be set aside unless so palpably excessive as to indicate passion or prejudice on the part of the jury. Garner v. Burns Mid-Town, Inc., 346 Ill. App. 162; Levanti v. Dorris, 343 Ill. App. 355; Gorczynski v. Nugent, 335 Ill. App. 63; Hannigan v. Elgin, J. & E. Ry. Co., 337 Ill. App. 538; Liby v. Town Club, 5 Ill.App.2d 559."

Here there is nothing in the record to indicate passion or prejudice on the part of the jury and the verdict under the circumstances in this case should not have been, and will not be by this court, disturbed on this ground.

In Dodds v. Chicago Transit Authority, 9 Ill.App.2d 388, filed this day, we again call attention to the rule frequently stated by this court that matters will not be here considered which have not been raised in the lower court in the motion for a new trial and that we will not consider any ruling of the trial court in giving or refusing instructions unless the instructions involved are specifically pointed out in the motion for a new trial. In the case now before us we have considered or referred only to matters properly so raised.

We find no reversible error in the record. The judgment of the Superior Court of Cook County is affirmed.

Affirmed.

ROBSON and SCHWARTZ, JJ., concur.