Lillian Clancy, Appellee, v. Dominic R. Pacenti, Appellant.

Gen. No. 47,085.

First District, First Division.
October 21, 1957.
Rehearing denied November 12, 1957.
Released for publication December 5, 1957.

171

 █ 

Hinshaw, Culbertson, Moelmann & Hoban, of Chicago (Oswell G. Treadway, of counsel) for defendant-appellant.

Richard G. Finn and Morris, Liss, Arnold & Hennessy, of Chicago, for appellee.

PRESIDING JUSTICE SCHWARTZ delivered the opinion of the court.

Plaintiff sued for damages resulting from an automobile accident. The parties waived a jury and submitted the legal and equitable issues to the court. The court heard the evidence and arguments and found that a release given by plaintiff to defendant was void and that defendant was liable for the injuries sustained. Plaintiff's damages were assessed at $22,500, and after giving credit to defendant for the payment of $150 made at the time of the execution of the release, the court entered judgment for plaintiff for $22,350, from which defendant appeals.

The principal question turns on the finding by the trial court that the release was void. Plaintiff claims that the release was based on a mutual mistake of fact with respect to the nature and extent of the injuries. Defendant, on the other hand, claims that the terms of the release are clear and certain, that by it plaintiff released defendant from all actions, damages or demands arisen, arising, or growing out of any and all accidents or matters and especially the accident complained of. This, he says, is binding upon the parties with respect to the injuries now complained of.

172

The accident occurred on December 22, 1950, while defendant was driving his car along Washington boulevard near its intersection with Homan avenue in Chicago. Plaintiff's car and the car behind it had stopped at the intersection for a red light. Defendant's car struck the rear end of the car behind plaintiff's and pushed it up against plaintiff's car which in turn collided with the car ahead. Plaintiff was thrown against the dashboard. At the time of the accident she did not appear to be seriously injured. Her doctor advised her that a muscle in her back was sprained. The doctor for defendant's insurer, whom plaintiff saw after she had written to the insurer, examined plaintiff on February 23, 1951, and reported that his examination revealed that the motion of the spine was unrestricted in all directions and that there was no spasticity or atrophy of the spinal muscles, but on deep pressure in the middle of the lumbar area plaintiff complained of pain. It was his conclusion that plaintiff as a result of the accident sustained a bruise to the middle portion of her back, all objective evidence of which had completely disappeared; that she still had some subjective complaint of pain which the doctor believed would disappear without any further inconvenience. It was his prognosis that plaintiff would make a complete and satisfactory recovery and would definitely suffer no permanency as a result of the injuries. The adjuster for the insurance company told plaintiff's husband that from their doctor's report the injury was "shock and shaken up, and I think there was a minor bruise on the shoulder. It was my understanding at the time that there was nothing seriously wrong." He negotiated a settlement on the basis of $90 to $100 property damage to plaintiff's automobile and $50 to $60 representing injuries to plaintiff, and obtained the release in question on March 1, 1951.

Following this, plaintiff continued to have headaches and pain, saw various doctors, went to a hospital for

two days, and remained in bed for periods of time but was unable to get relief from increasing pain. She finally went to an orthopedic surgeon in July 1951. He examined her, took x-rays, and diagnosed her condition as that of a herniated or ruptured intervertebral disc in the lower lumbar region. He recommended treatment, but that giving no relief, performed surgery on August 3, 1951. The disc between the fourth and fifth lumbar vertebrae was found to be degenerated, swollen, out of place, and impinging on a nerve. After the operation plaintiff made some improvement but the pain and symptoms continuing, another operation was performed September 29, 1951, and again a large herniated disc, displaced backward, compressing and displacing the nerve root between the fifth lumbar and the first sacral segments was found. There was pain after this surgery but plaintiff's condition improved greatly and she was discharged from the hospital November 3, 1951. According to the doctor there was still some residual disability in her back but no longer any trouble with the nerve, and the sciatic pain disappeared.

The trial court held that plaintiff executed the release upon the assumption that she had no more than a muscle sprain when, as a matter of fact, "she had two ruptured discs or two discs that were injured to the extent that in time they would become herniated," and that plaintiff was not negligent in failing to discover these injuries at an earlier date as the diagnosis of her condition was made by her own doctor and the doctor for the insurer, who were in general agreement. There is ample evidence to support the trial court's findings, and the sole question on this point is whether the mistake was of such character as to afford a basis for setting aside the release.

There is only one case in Illinois bearing directly upon the question—Fraser v. Glass, 311 Ill. App. 336, 35 N.E.2d 953 (1941). In that case, a general and special release was signed for $150 on the assumption

that plaintiff's injuries consisted of bruises, scratches and a cut to the bone on the knee. Later, blood clots were discovered and the court set aside the release on the ground of mutual mistake of fact as to the nature and extent of the actual injuries. While this is the only case in Illinois, the great weight of authority throughout the United States supports the plaintiff's contention that under circumstances such as exist in the instant case the release should be set aside. Serr v. Biwabik Co. (Minn.), 278 N. W. 355, 117 A. L. R. 1022 (with a long notation supplementing its previous notation in 48 A. L. R. 1462); Scheer v. Rockne Motors Corp. (1934), 68 F.(2d) 942; Southwest Pump & Machinery Co. v. Jones (1937), 87 F.(2d) 879; O'Meara v. Haiden (1928), 204 Cal. 354, 268 P. 334; Richardson v. Chicago, M. & St. P. R. Co. (1923), 157 Minn. 474, 196 N. W. 643; Mix v. Downing (1929), 176 Minn. 156, 222 N. W. 913; Collins v. Hughes & Riddle (1938 Neb.), 278 N. W. 888; Poti v. New England Road Mach. Co. (1928), 83 N. H. 232, 140 A. 587. Corbin on Contracts, Vol. 3, Par. 598, p. 358, states the law thus:

"Releases of claims for personal injury have frequently been held voidable for mistake, on the ground that the claimant was unaware of the nature and extent of his injury when he assented to a settlement. Sometimes advantage has been taken of his weakness and ignorance; and the possibility of this, even though not definitely proved, has made courts readier to hold that the release was executed on a mistaken basic assumption as to the nature of the injury. The case for avoidance is stronger if the mistake was induced by untrue representations, either fraudulent or innocent, by the defendant, his doctors, or his claim agents; *but mistake may be sufficient even though not so induced.*" (Italics ours.)

Defendant argues with emphasis that the words of the release express an unequivocal intention to include future as well as present claims. The same point was

made in Graham v. Atchison, T. & St. F. Ry. Co., 176 F.2d 819, 825 (C. A. 9th, 1949). The court held that notwithstanding the broad general terms of the release, mistake of fact on the part of the releasor, mutual mistake of fact, or fraud are recognized grounds for rescission and in any one of these three situations the broad terms of the release do not stand in the way of rescission. In Great Northern R. Co. v. Reid, 245 Fed. 86 (C. A. 9th, 1917), the release in question being as broad as the one in the instant case, the court held that the general language would not be held to include a particular injury, "then unknown to both parties, of a character so serious as clearly to indicate that, if it had been known, the release would not have been signed." The court stated as a basis for its reasoning that a settlement made without regard to an undisclosed physical condition cannot stand because the settlement was for the injuries and damages disclosed and then known to the parties. As before stated, this is undoubtedly the prevailing doctrine of the United States and it is the doctrine of Illinois insofar as the limited authority in this state has given the matter consideration.

We have not taken into account cases other than those involving personal injuries because personal injury cases in this respect are *sui generis*. Ricketts v. Pennsylvania R. Co., 153 F.2d 757, p. 767. However, no rationale has been formulated for the special treatment of such cases. It appears to rest on the peculiar character of personal injuries. In such cases it is not an article of commerce that is involved, but the human mind and body, still the most complicated and mysterious of all the things that are upon or inhabit the earth. Here, mistakes are easily made and the consequences are more serious than in any other of the affairs of man. A slight abrasion may mean nothing or it may lead to a malignancy. Insignificant pain may mean the

176

beginning of a fatal coronary attack or only a slight intestinal disturbance. Yet, man cannot and does not live in dread of these possibilities. He accepts assurances that all will be well, even though ultimate consequences cannot be appraised as in matters involving property or services. In Ricketts v. Pennsylvania R. Co., supra, Judge Frank, in a specially concurring opinion, says (p. 767):

"In all likelihood, it is because the courts have sensed the differentiated character of releases of personal injury claims that the 'modern trend,' as Wigmore describes it, 'is to . . . develop a special doctrine . . . for that class of cases, liberally relieving the party who signed the release.' (Wigmore, Evidence, Sec. 2416.)"

The sharp economic inequality of the bargaining parties which generally exists in this class of cases has also been considered by the courts in their consideration of this doctrine. It is by no means as modern an innovation as to some may appear. Long before personal injury cases began to absorb the common law courts, the rule was applied to seamen in admiralty cases. (See opinion of Judge Frank, supra, quotation from Mr. Justice Story.) That related to contracts between seamen and their employers, but no one can doubt that it has a considerable bearing upon situations such as are here presented.

The foregoing are the principal reasons which have impelled courts to take a broad view in affording relief for a release executed on a mistaken understanding of the nature and extent of personal injuries. Yet it is important to preserve a field of free action within which parties may compromise their differences with substantial assurance that the matter will not arise again. We therefore summarize the aspects of the instant case which bring it within any reasonable rule to be deduced from the cases cited. The release was

177

given for a nominal sum, $150, $100 of which was for damages to plaintiff's car. Both parties understood plaintiff's injuries to be of little or no consequence when, as a matter of fact, they were of a character different, both as to nature and extent, from the diagnosis. If plaintiff had known that as a result of the accident she had two herniated discs and had settled on the assumption that the consequences would not be as severe as those which followed, a different case would have been presented to us. The mistake was clearly proved.

■ Defendant makes the point that plaintiff failed to prove any causal connection between the occurrence complained of and her injuries and disabilities, as evidenced by the testimony of her orthopedic surgeon when the usual hypothetical question was put to him. His answer was that he believed there was sufficient basis in the accident described to cause or bring about the herniated discs and that a typical history of the cause of herniated discs had been presented to him. He stated that its cause could have resulted from other sources but that this was unlikely. The hypothetical question was couched in the approved form. We will not embark upon a critical examination of the law which requires the submission of questions in this form. It is well established in Illinois. There was adequate proof of causal connection.

■ ■ Defendant also contends that the damages awarded are excessive. A finding as to damages will not be set aside unless it appears to have been the result of passion and prejudice. This is the rule to be applied whether the damages are found by a jury or by a court without a jury. Santiemmo v. Days Transfer, Inc., 9 Ill.App.2d 487, 113 N.E.2d 539 (1956); Garner v. Burns Mid-Town, Inc., 346 Ill. App. 162, 104 N.E.2d 506 (1952); Levanti v. Dorris, 343 Ill. App. 355, 99 N.E.2d 398 (1951); Gorczynski v. Nugent, 335 Ill.

App. 63, 80 N.E.2d 418 (1948). The trial court appears to us to have appraised the damages with moderation and good judgment.

Judgment affirmed.

McCORMICK and ROBSON, JJ., concur.