BETTY FLORKIEWICZ, Plaintiff-Appellant, *v.* RUBEN GONZALEZ *et al.*, Defendants-Appellees.

First District (4th Division)   No. 60962

Opinion filed April 28, 1976.

116

Arwin M. Zoller and Norman E. Goldman, both of Chicago, for appellant.

Irvin Tischer, of Chicago, for appellees.

Mr. PRESIDING JUSTICE JOHNSON delivered the opinion of the court:

Plaintiff appeals from an order entered by the trial court directing a verdict in favor of defendants in a personal injury suit.

At approximately 7:30 p.m. on November 28, 1970, plaintiff, her son, daughter and granddaughter were riding as passengers in a taxicab operated by Ruben Gonzalez on behalf of Flash Cab Company and Saturn Cab Company. The taxicab was proceeding in a northwesterly direction along Milwaukee Avenue in Chicago when it collided with another car in the intersection of Milwaukee Avenue and Leavitt Street. The driver of the automobile, Robert Ross, had been traveling in a southeasterly direction along Milwaukee and was in the process of executing a left turn on Leavitt. At the time of the accident, the traffic light at the intersection was green for both vehicles. Plaintiff was rendered unconscious and taken by fire ambulance to a hospital for emergency care. She was treated and released the same evening.

Two days after the accident, an investigator for the taxicab companies visited plaintiff at her home and took a statement concerning the accident. The following day, December 1, 1970, plaintiff and her 13-year-old son signed separate agreements covenanting with Ruben Gonzalez, Flash Cab Company and Saturn Cab Company not to prosecute any claim against them. The consideration for each covenant not to sue was $30. Plaintiff returned to the hospital the same day, after being informed by her doctor that she had sustained a skull fracture. She remained hospitalized for 12 days.

Plaintiff, on December 8, 1970, instituted an action against Ruben Gonzalez, Flash Cab Company, Saturn Cab Company, Robert Ross, Norm's Service, Inc. and Norbert Wutz. On July 23, 1971, she signed a covenant not to sue with Ross, Norm's Service, Inc. and Wutz. The consideration for this covenant was $4800. One month later a check was issued by the Great American Insurance Company for $4800, payable to plaintiff and her attorney. The following was printed on the reverse side of the check:

> "The draft will not be paid unless it bears endorsement of all parties named as payees. If endorsement is made by attorney or other representative, satisfactory evidence of authority must

accompany the draft. Endorsement of this draft constitutes a release in full for account as stated herein."

Defendants Gonzalez, Flash Cab Company and Saturn Cab Company filed an affirmative defense to plaintiff's suit. They moved that the case be dismissed on the ground that plaintiff had executed a covenant not to sue on December 1, 1970, in which she agreed to refrain from instituting a claim against these defendants in consideration of $30. Plaintiff filed a reply denying that she had executed such a covenant and alleging that at the time in question she was suffering from a fractured skull and did not remember receiving any monies from defendants or cashing a check payable to her in the amount of $30.

Defendants subsequently filed a second affirmative defense contending that the words on the reverse side of the check dated August 23, 1971, and endorsed by plaintiff's attorney were words of release which discharged a joint tortfeasor and therefore also released defendants. In her reply, plaintiff submitted that this check was consideration not for a release but for a covenant not to sue entered into with Ross, Norm's Service, Inc. and Wutz. The words on the reverse side of the draft were said to be the standard-form draft used by Great American Insurance Company and not intended as a release by the parties.

A jury trial was conducted on the matter. At the close of all the evidence, defendants moved for a directed verdict. The court granted the motion and directed the jury to return a not guilty verdict in favor of all defendants. Plaintiff now appeals to this court, presenting the following issues for review: (1) whether a prima facie case of negligence on the part of defendants was presented so that the issue was a question of fact to be decided by the jury; (2) whether the December 1, 1970, covenant not to sue was void as a mutual mistake of fact; and (3) whether the language on the reverse side of the August 23, 1971, draft was a release or merely payment for a covenant not to sue. We shall rule on these issues in reverse order.

■■ Under Illinois law, a covenant not to sue does not have the same legal effect as a release. A covenant not to sue one of several joint tortfeasors does not automatically release the other wrongdoers not party to the contract or affect their liability. (*Edgar County Bank & Trust Co. v. Paris Hospital, Inc.* (1973), 10 Ill. App. 3d 465, 470, 294 N.E.2d 319, *aff'd in part, rev'd in part, on other grounds,* 57 Ill. 2d 298, 312 N.E.2d 259.) In determining whether the language on the reverse side of the check issued August 23, 1971, was a release of all parties, this court must look to rules of contract construction. We shall therefore consider the words used, the amount paid, the intention of the parties and the substance of the agreement. *Reese v. Chicago, Burlington & Quincy R.R. Co.* (1972), 5 Ill. App. 3d 450, 456, 283 N.E.2d 517.

■■ Defendants contend the words "Endorsement of this draft constitutes a release in full for account as stated herein," printed on the check discharged them as joint tortfeasors. However, we do not believe that the check represented the agreement of the parties, but find instead that it was merely the consideration for the July 23, 1971, covenant not to sue. Under the terms of this covenant, plaintiff only agreed not to sue Ross, Norm's Service, Inc. and Wutz in consideration of a $4800 payment. The check which was issued in payment was not written by the parties to the agreement; instead, it was a standard-form draft used by Great American Insurance Company.

We also note that the amount paid, $4800, was the exact sum specified as the consideration for the covenant not to sue executed on July 23. If it had been the intention of the parties to release additional persons, where was the additional consideration? The testimony of the claims adjuster who negotiated the covenant showed that the draft was issued pursuant to the covenant and that no further negotiations took place between the time the agreement was signed and the date of the check. Clearly, the intentions of the parties was to effectuate the July 23 covenant not to sue and not to release other joint tortfeasors who were not parties to the covenant.

The trial court refused to allow plaintiff to introduce the covenant not to sue into evidence, citing *De Lude v. Rimek* (1953), 351 Ill. App. 466, 115 N.E.2d 561, as support. In that case, the reviewing court found it was improper to permit the defendant to introduce into evidence a covenant not to sue between the plaintiff and another joint tortfeasor. The rationale was that the covenant was not relevant to the issue of liability and most likely considered by the jury as evidence that the covenantee was the party responsible for the injury.

The situation in *De Lude* is distinguishable from the one at bar in two respects. First, it was plaintiff, not defendants, who tried to introduce the covenant into evidence. Second, its admission was sought to establish the fact that the August 23 draft was issued pursuant to the covenant—a critical element in rebutting the affirmative defense of release. We hold that it is a plaintiff's prerogative to introduce into evidence a covenant not to sue in his own behalf.

■■ There is no reason why the expressed intent of the parties to the covenant, clearly embodied in the agreement itself, should not be given the effect contemplated. We therefore find that the trial court erred in directing a verdict in favor of defendants.

Plaintiff also seeks to void the December 1, 1970, covenant not to sue entered into with defendants Gonzalez and Flash and Saturn Cab Companies on the ground of mutual mistake. It is alleged that at the time of execution, plaintiff was suffering from a skull fracture and did not know what documents she was signing.

■■ ■ The courts in Illinois have refused to permit any form of words, no matter how all-encompassing, to foreclose scrutiny of a release and the attendant circumstances to be sure that it was fairly made and accurately reflected the intentions of the parties. (*Ruggles v. Selby* (1960), 25 Ill. App. 2d 1, 13, 165 N.E.2d 733.) The trend is to set aside releases of personal injury claims in a situation where the facts, when finally known, present an unconscionable result. (*Smith v. Broscheid* (1964), 46 Ill. App. 2d 117, 122, 196 N.E.2d 380; *Ruggles v. Selby* (1960), 25 Ill. App. 2d 1, 12, 165 N.E.2d 733.) In this case, plaintiff was treated and released from the hospital after the accident. It was not until two days later that she learned the full nature and extent of her injuries. In deciding whether a release should be voided under these circumstances, the controlling issue is whether or not there was a mutual mistake of fact with respect to the injuries suffered by the plaintiff. *Ruggles v. Selby* (1960), 25 Ill. App. 2d 1, 18, 165 N.E.2d 733.

The investigator for the defendants testified that when he made the offer to plaintiff, he was unaware of the skull fracture and considered $30 to be adequate compensation. In any event, defendants could not be heard to contend that they knew the full nature and extent of plaintiff's injuries, for to do so would be tantamount to an admission of fraud. (*Ruggles v. Selby* (1960), 25 Ill. App. 2d 1, 19, 165 N.E.2d 733.) Illinois courts will also consider the amount of time which occurred between the accident and the execution of the release, which in this case was less than three days. The investigator tried unsuccessfully to visit plaintiff on her initial admission to the hospital and came to her house on November 29 and 30 and December 1, at which time she signed the covenant, prior to her return to the hospital. Undue haste in securing a release from a person still suffering from an injury is frowned upon and casts suspicion on the validity of the release. *Brackeen v. Milner* (1967), 88 Ill. App. 2d 50, 58, 232 N.E.2d 241.

Defendants contend that plaintiff was aware of her fractured skull at the time she signed the covenant. Therefore, their argument goes, since only defendants were mistaken, this was a case of unilateral mistake for which no recovery may be had in Illinois. On the other hand, plaintiff does not remember reading or signing the covenant and was suffering from severe headaches and a fractured skull. We find it difficult to give credence to the contention that plaintiff fully understood that she was releasing defendants under these circumstances. The existence of injuries of such a character that reasonable parties could not have entered into the agreement except through error is an element that weighs heavily against the finality of the language of the covenant. (*Ruggles v. Selby* (1960), 25 Ill. App. 2d 1, 15, 165 N.E.2d 733.) The particular injury to plaintiff was of a character so serious as to clearly indicate that if known at the time of the

execution of the covenant, she would not have completed the settlement. *Reede v. Treat* (1965), 62 Ill. App. 2d 120, 130, 210 N.E.2d 833.

A significant factor indicating mistake on the part of plaintiff as to the nature of her injuries is the amount of money accepted as consideration for the release. (*Ruggles v. Selby* (1960), 25 Ill. App. 2d 1, 19, 165 N.E.2d 733.) Thirty dollars can hardly be considered adequate compensation for a skull fracture; rather, it smacks of unconscionability. The amount of consideration does not indicate an understanding or intent on plaintiff's part that this nominal sum was to redress any injuries other than those minor injuries for which she had been treated. *Ruggles v. Selby* (1960), 25 Ill. App. 2d 1, 19, 165 N.E.2d 733.

■■ Where the circumstances surrounding a settlement show a great discrepancy between the amount of the settlement and the amount of the ensuing damages, the exercise of pressure to make the settlement, or the occurrence of unforeseen and extraordinary complication in the known injuries, it clearly indicates that the settlement was executed over a mutual mistake of fact, and the court may act in order to prevent an unconscionable hardship to the injured party. (*Welsh v. Centa* (1966), 75 Ill. App. 2d 305, 313, 221 N.E.2d 106.) We will follow the modern trend of decisions toward liberally relieving a party who has signed a release under a mistake as to the nature of his injuries, and, accordingly, find the December 1, 1970, covenant not to sue void on the ground of mutual mistake.

■■ Plaintiff contends that the court erred in directing a verdict in favor of defendants when material and controverted questions of fact appeared from the evidence presented. We agree with her contention. The question of negligence on the part of defendants was one for the jury. Under the well-established rule in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504:

> "[V]erdicts ought to be directed and judgment *n.o.v.* entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand."

Plaintiff made out a prima facie case of negligence. The evidence offered in her behalf, if believed by the jury, would render defendants liable. The trial court erred in directing the verdict under these circumstances.

The order of the circuit court of Cook County granting defendants' motion for a directed verdict is reversed and the cause remanded for a new trial.

Reversed and remanded.

DIERINGER and BURMAN, JJ., concur.