DAVID B. *et al.*, Plaintiffs-Appellees, *v.* ROBERT DeVITO, Director, Illinois Department of Mental Health and Developmental Disabilities *et al.*, Defendants-Appellants.

First District (5th Division)   No. 79-975

Opinion filed July 11, 1980.

William J. Scott, Attorney General, of Chicago (Alan E. Grischke and Richard L. Ryan, Assistant Attorneys General, of counsel), for appellants.

Patrick T. Murphy, of Chicago, for appellees.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Defendants Robert DeVito (Director, Illinois Department of Mental Health and Developmental Disabilities (DMH)) and Gregory Coler (Director, Department of Children and Family Services (DCFS)) appeal the grant of summary judgment requiring the said agencies to coordinate their efforts to provide individualized treatment for members of the plaintiff class. On appeal, defendants contend that (1) it was error to permit the suit to proceed as a class action; (2) summary judgment should not have been granted; (3) the agencies were improperly required to render services not mandated by the relevant statutes; and (4) it was error to deny defendants' motion for a change of venue.

Although the record is unclear in some respects, it appears that 16-year-old David B., one of the two named plaintiffs, was originally a patient in the Tinley Park Mental Health Center, a facility of DMH. After he was released, he allegedly stole a weapon from his father's house and then set the house on fire, following which a delinquency petition was filed in juvenile court charging him with theft and arson. While awaiting trial, David was detained for a time in the Audy Home and then transferred to DMH for hospital care. It was subsequently determined by

DMH that David was no longer in need of hospitalization and thus was not entitled to receive care from DMH. Before being released, David was referred to a "court coordinator" who sought services in David's behalf from DCFS; however, that agency refused to accept David because of his emotional problems. Similarly, 14-year-old Daniel C., the other named plaintiff, was originally a patient at DMH's Chicago Read Hospital. While on unauthorized leave, he allegedly threatened a police officer with an unloaded shotgun and was charged with assault in a delinquency petition. While awaiting trial, he was again hospitalized at Chicago Read, and once more it was determined that he was neither in need of hospitalization nor entitled to services from DMH. A request of Daniel's probation officer for placement services from DCFS was denied on the basis that he was emotionally disturbed. Thus, it appears that David and Daniel were both patients at DMH hospitals and were about to be released because DMH felt they were no longer in need of hospitalization; that DCFS would accept neither of them, on the grounds that they were too emotionally disturbed to be handled by that agency; and that the only place they could be sent was the Audy Home—which is operated by the Department of Corrections.

In August of 1978, apparently while both boys were still in the care of DMH, the instant suit was filed. The subsequent amended complaint listed David and Daniel as plaintiffs, by their next friend Patrick T. Murphy, "[o]n behalf of themselves and a class of persons similarly situated but too numerous and transitory to mention." The complaint essentially alleged the facts set forth above and asserted that both agencies were under a statutory duty to provide services to plaintiffs. In the prayer for relief, plaintiffs requested an order declaring that plaintiffs and the members of the class "are entitled to benefits from DCFS and/or DMHDD once their problems have been identified and diagnosed as * * * having to do with a mental disorder and who may intentionally or unintentionally physically harm themselves or others and who are unable to care for themselves so as to guard themselves from physical injury or to provide for their physical needs." The complaint alluded to the class twice, stating:

> "The children in the class whom the two named Plaintiffs represent are those who are in need of mental treatment because they are afflicted with a mental disorder and who from time to time may unintentionally physically harm themselves or others and who are unable to care for themselves so as to guard themselves from physical injury or to provide for their own physical needs";

and stating also that:

> "These children either are compelled to remain at the Audy Home or placed in mental health facilities and although they need

placement which only the Department of Children and Family Services can provide and there are no proceedures [*sic*] wherein the Department in keeping with due process guidelines will accept such youngsters for placement. The result in the past has been that frequently children who should not be committed to the Department of Corrections, Juvenile Division are so committed by Juvenile Court Judges, after findings of delinquency, because there simply is no alternative placement."

After both defendants moved for judgment on the pleadings, plaintiffs moved for a preliminary injunction which was subsequently withdrawn after an agreement was apparently reached whereby DMH would attempt to obtain placement for Daniel and DCFS would attempt to place David. Plaintiffs then filed a "motion for rule to show cause and for summary judgment," wherein they alleged essentially that the agencies had not honored that agreement. Thereafter, the trial court entered an order and memorandum opinion finding that the requisites for maintaining a class action as set forth in section 57.2 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 57.2) were satisfied; that DMH has "a statutory duty to provide further care as needed by these named plaintiffs and other members of the class who are under the jurisdiction of the Juvenile Division of the Circuit court, and to assist Cook County Juvenile authorities and DCFS in planning for and making available such services"; that DCFS is likewise statutorily mandated to provide services to "those persons whose claims are being pressed in this action"; and that "[t]he practicalities of properly caring for this class of juveniles further support the Court's conclusion that the General Assembly intended the responsibility to be joint." The order which granted plaintiffs' motion for summary judgment and denied defendants' motions for judgment on the pleadings, stated also:

"[T]hat the plaintiffs, individually and as a class, are entitled to receive appropriate services from both DMH and DCFS. The exact nature of these services must be determined on an individual basis. It is further ordered that the defendants, DMH and DCFS shall coordinate their efforts in order to prepare an individualized treatment plan which shall provide, inter alia, for counseling and treatment of emotional problems, appropriate residential placement and other services."

Immediately after judgment was entered, defendants moved to stay the order pending appeal. A hearing was held on the motion at which plaintiffs' counsel stated he would call two witnesses "to present evidence about the number of people involved at the present and the immediacy of harm to anyone as well as plaintiffs in general." He then called Mary Donahue-Patoff, a juvenile court probation officer to whom Daniel was

referred for social investigation in 1977, who testified that the hospitalization history of Daniel was as set forth above; that in December of 1978, Chicago Read notified her that Daniel was no longer in need of hospitalization; that DCFS refused replacement assistance; and that because DMH has indicated Daniel should not return home to live, he remains at Chicago Read. Irene Nelson, also a juvenile court probation officer, testified that children are referred to her by probation officers, guardians ad litem, the state's attorney's office, the public defender's office, and other agencies; that it is her responsibility to assure that these children receive needed mental health services; that from January of 1978 through May of 1979, 110 children were referred to her; that 86 of the 110 children sought residential placement, but only two were actually so placed; and that the remaining 84 children were either released from hospitals, returned to their homes, placed in interim placements, or sent to foster homes.

DMH then called Patricia Barger, a DMH psychologist and director, who testified that she is responsible for overseeing the functions of the office and its professional staff; and that, in her opinion, DMH could not practically implement the trial court's order at that time. On the next day of the hearing, the trial court informed the attorneys that it had received a telephone call from someone in the Governor's office who wished to arrange a meeting with defendants DeVito and Coler, the Department of Corrections director, and the presiding judge of the juvenile court to discuss a possible solution of the problem presented in the case. Subsequently, defendant's motion to stay was denied, and this appeal followed.

At the oral arguments in this court, it was represented that, after this matter was concluded in the trial court, a meeting such as that proposed by the Governor's office was held and a "Governor's Review" committee was established by DMH and DCFS jointly for the purpose of placing children who were previously regarded as being not sufficiently emotionally disturbed to be accepted by DMH but too disturbed to be handled by DCFS; and that pursuant to this "Governor's Review," placement had in fact been made for the named plaintiffs herein. In addition, plaintiff's counsel expressed satisfaction with the voluntary establishment and operations of the review committee as well as the placement of the named plaintiffs.

Opinion

Defendants first contend that the trial court erred in allowing the instant suit to proceed to judgment as a class action. The maintenance of class actions is governed by section 57.2 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 57.2), which provides:

"(a) An action may be maintained as a class action in any court of this State and a party may sue or be sued as a representative party of the class only if the court finds:

(1) The class is so numerous that joinder of all members is impracticable.

(2) There are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members.

(3) The representative parties will fairly and adequately protect the interest of the class.

(4) The class action is an appropriate method for the fair and efficient adjudication of the controversy."

Further, section 57.3(a) provides:

"(a) Determination of Class. As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it may be so maintained and describe those whom the court finds to be members of the class. This order may be conditional and may be amended before a decision on the merits." (Ill. Rev. Stat. 1977, ch. 110, par. 57.3(a).)

We note further that "the proponent of the class action has the burden of establishing these prerequisites and the court must find them present before it can sanction the maintenance of the action as a class action." (*McCabe v. Burgess* (1979), 75 Ill. 2d 457, 464, 389 N.E.2d 565, 567, *cert. denied* (1979), 444 U.S. 916, 62 L. Ed. 2d 170, 100 S. Ct. 230.) Also, we are mindful that a trial court's determination as to the propriety of a class action may be reversed only if it is found that the trial court abused its discretion. *McCabe v. Burgess.*

■■ In the case at bar, the trial court described the class in its memorandum opinion as follows:

"The class whose rights the representatives herein seek to assert is composed of those minors who are under the jurisdiction of the Court and who require some type of residential placement such as that which DCFS is empowered to provide, and some type of psychiatric or psychological treatment such as that which DMH is empowered to provide, but who are not accepted for such placement or treatment by the state agencies involved."

Defendants argue that the trial court's certification of the class was improper in that there was no evidence indicating that the class was so numerous as to render joinder impracticable, as required by section 57.2(a)(1). We agree. There is no allegation in the complaint as to the number of individuals who would fall within the class as described by the court, and there was no evidence adduced prior to the entry of the judgment order which indicated the size of the class. Plaintiffs assert that a

class of at least 84 children was established by the testimony of Irene Nelson that from January of 1978 through May of 1979, 110 children were referred to her for placement; that 86 of the 110 children sought residential placement, with only two actually placed; and that the remaining 84 were either released from hospitals, returned home, placed in interim placements, or sent to foster homes. It is our view, however, that this testimony is not supportive for several reasons. First, we note that Nelson testified after the entry of the judgment order; therefore, the testimony could not have served as a basis for the certification of the class. Second, Nelson did not testify that these 84 children "required some type of psychiatric or psychological treatment such as that which DMH is empowered to provide," as did the class described by the trial court in its order. Third, there was no testimony indicating that the plight of any of these 84 children was due to inaction by DMH and DCFS, which was the essence of plaintiff's complaint. In light thereof, we find no basis in the record upon which the trial court properly could have determined that the class was so numerous as to render joinder impracticable or even that a class of persons as described in the order existed. We conclude that the determination of a class finds no support in the record.

■■■ Since this conclusion does not in itself nullify the judgment order as it pertains to the named representatives of the class (see *Ditland Plumbing, Inc. v. Milwaukee Electric Tool Corp.* (1977), 55 Ill. App. 3d 332, 371 N.E.2d 15), we would ordinarily be required to consider the merits of defendants' remaining allegations of error and determine whether they affect the judgment in favor of the representatives. However, we need not do so here inasmuch as it appears that the controversy concerning the placement of the named representatives, if not the entire class (assuming, of course, that it exists), is now moot. This is apparent from the representations of the parties at oral argument that DMH and DCFS voluntarily participated in a "Governor's Review" committee established for the purpose of securing placement for children whom neither of those agencies previously would accept, and that the named plaintiffs were in fact placed by this committee. It was also represented to us that, in the future, children who were previously regarded as too emotionally disturbed to be accepted by DCFS and not sufficiently disturbed to warrant hospitalization under DMH would be given individual consideration by the said committee and that it would attempt to obtain placement for them. It was plaintiffs' position on oral argument that this matter is now moot and, in view of the action of the "Governor's Review" committee, we agree that there is no longer an actual controversy as to the interests or rights of the parties and that this case is therefore moot. (*Chicago City Bank & Trust Co. v. Board of Education* (1944), 386 Ill. 508, 54 N.E.2d 498; *Harney v. Cahill* (1965), 57

Ill. App. 2d 1, 206 N.E.2d 500.) Accordingly, the portion of the appeal regarding the named representatives is dismissed. *City Bank & Trust Co. v. Board of Education; National Jockey Club v. Illinois Racing Com.* (1936), 364 Ill. 630, 5 N.E.2d 224.

For the reasons stated above, that portion of the judgment order allowing this suit to stand as a class action is reversed, and the appeal from the order insofar as it grants relief by summary judgment to the named representatives is dismissed.

Reversed in part.

Dismissed in part.

LORENZ and WILSON, JJ., concur.