RUSSELL McCOMB, Plaintiff-Appellant, *v.* STARR SEESTADT, Defendant-Appellee.—(EDWARD JURACKA, Defendant.)

First District (2nd Division)    No. 80-360

Opinion filed February 17, 1981.

Raymond Kahn, and William J. Harte, Ltd., both of Chicago (William J. Harte, of counsel), for appellant.

Pretzel, Stouffer, Nolan & Rooney, Chartered, of Chicago (Robert Marc Chemers and Joseph B. Lederleitner, of counsel), for appellee.

Mr. JUSTICE PERLIN delivered the opinion of the court:

This action was brought by plaintiff, Russell McComb, to recover damages for injuries he sustained in a fall upon a sidewalk. Starr Seestadt, owner of the premises adjacent to the sidewalk, Edward Juracka and Patricia Juracka, owners of the premises adjoining Seestadt's premises, and Miguel Pedraza and Rosemarie Pedraza, occupiers of the premises owned by the Jurackas, were named as defendants. Defendant Seestadt filed a motion to dismiss based upon a covenant not to sue executed by plaintiff and his wife, Arlene McComb. The trial court granted the motion

and dismissed the action as to defendant Seestadt.[1] Plaintiff appeals from the dismissal contending that the trial court erred in granting defendant Seestadt's motion because the covenant not to sue was "grossly unfair and unconscionable."

For reasons hereinafter set forth, we affirm.

The following factual allegations emerge from pleadings and affidavits:

On August 17, 1976, plaintiff was walking on the "sidewalk adjacent to the premises" owned by defendant Seestadt, when his foot "got caught in a hole in the sidewalk of defendant Seestadt." He lost his balance and caught his foot "in the bushes extending over a riser on the premises" owned by the defendants Juracka and occupied by defendants Pedraza. As a result plaintiff fell to the concrete sidewalk and was injured. Allstate Insurance Company insured both defendant Seestadt and defendants Juracka.

On January 4, 1977, Bernard Hertko, a casualty adjuster for Allstate, initiated negotiations with plaintiff with regard to his claim against defendant Seestadt. At this time plaintiff was still undergoing treatment for his injuries, which were diagnosed as "a locked left knee, a degenerated medial meniscus tear along the posterior horn of the left knee and laxity of the left medial collateral ligaments." Treatment for these injuries included "a joint effusion, a left arthrotomy, a left medial meniscetomy and a repair of the medial collateral ligament."[2] In March 1977 there was an additional diagnosis of "cellulitis over the left thigh, post vena caval clipping, a recurred pulmonary embolism; pulmonary infarction."

On October 17, 1977, 14 months from the date of the accident, more than 9 months after Hertko initiated negotiations, and more than 7 months after the final diagnosis, plaintiff executed the covenant not to sue in return for $7,500. Subsequently, on June 23, 1978, this lawsuit was filed.

A release or a covenant not to sue, in essence, is the abandoning of a claim to the person against whom the claim exists, and where the release or covenant is executed with knowledge of its meaning, causes of action covered by the release or covenant are barred. (See *Ogren v. Graves* (1976), 39 Ill. App. 3d 620, 622, 350 N.E.2d 249.) Defenses which may be asserted to vitiate a release or covenant not to sue include fraud in the execution, fraud in the inducement, mutual mistake and mental incompetence. (*Blaylock v. Toledo, Peoria & Western R.R. Co.* (1976), 43 Ill. App. 3d 35, 37, 356 N.E.2d 639.) Once the defendant establishes the existence of the document, legal and binding on its face, the burden shifts to the plaintiff to prove it invalid by clear and convincing evidence. *Meyer v. Murray* (1979), 70 Ill. App. 3d 106, 111, 387 N.E.2d 878.

---

[1] The suit apparently remains pending as to the other defendants.

[2] The record does not indicate the date(s) of these treatments.

Section 48 of the Civil Practice Act affords a means of obtaining at the outset of a case a summary disposition of issues of law or easily proved issues of fact. (*Meyer v. Murray*, at 114.) If the record establishes that a genuine and material question of fact does not exist, the motion to dismiss should be allowed. *Meyer v. Murray*, at 114.

■■ Viewing the record under the law relevant to the determination of settlement agreements in personal injury actions, and in accordance with the law applicable to motions to dismiss pursuant to section 48 of the Civil Practice Act, we believe for the reasons hereinafter stated, the trial court did not err in granting defendant Seestadt's motion to dismiss.

Plaintiff seeks the application of the rule that releases or covenants not to sue may be invalidated when it is shown that they are grossly unfair and unjust. We have no quarrel with this rule as discussed in *Meyer v. Murray* (1979), 70 Ill. App. 3d 106, 112, 387 N.E.2d 878; *Ruggles v. Selby* (1960), 25 Ill. App. 2d 1, 165 N.E.2d 733; and *Clancy v. Pacenti* (1957), 15 Ill. App. 2d 171, 145 N.E.2d 802, but it is clear that as applied in such cases the rule is premised upon a mutual mistake of fact regarding the nature and extent of the injuries sustained. (*Blaylock v. Toledo, Peoria & Western R.R. Co.* (1976), 43 Ill. App. 3d 35, 38, 356 N.E.2d 639.) However, plaintiff's argument finds no support in the record for the application of this rule. Neither the pleadings nor plaintiff's affidavit set forth any facts from which it may be inferred there was a mutual mistake of fact resulting in the execution of the release. In his written response to defendant's motion to dismiss, plaintiff stated:

> "In 1977 there was a diagnosis of pulmonary embolism, recurrent chest pains, and breathing difficulty. Further in March 1977 cellulitis over the left thigh, post vena caval clipping, a recurred pulmonary embolism, pulmonary infarction."

At the time the covenant was executed on October 17, 1977, plaintiff was fully aware of the nature and extent of his injuries. Yet in spite of these unresolved physical problems he executed the covenant not to sue defendant Seestadt. Under these facts, we cannot conclude that the extent of plaintiff's injuries was an "unexpected consequence." See *Scherer v. Ravenswood Hospital Medical Center* (1979), 70 Ill. App. 3d 939, 388 N.E.2d 1268; see also *Kiest v. Schrawder* (1978), 56 Ill. App. 3d 732, 372 N.E.2d 442.

Nor do the facts indicate that the casualty adjuster Hertko pressured plaintiff into settling.[3] More than four months passed from the date of the accident before Hertko contacted plaintiff to discuss a settlement and 14 months had passed before the settlement was reached. This is in sharp contrast to other cases where releases were set aside. (See *Florkiewicz v. Gonzalez* (1976), 38 Ill. App. 3d 115, 347 N.E.2d 401 (release executed

---

[3] We note that plaintiff does not claim that he was pressured, badgered or coerced into executing the covenant not to sue.

three days after accident); *Smith v. Broscheid* (1964), 46 Ill. App. 2d 117, 196 N.E.2d 380 (release executed two weeks after accident); *Fraser v. Glass* (1941), 311 Ill. App. 336, 35 N.E.2d 953 (release executed six days after accident).) Here plaintiff had ample time to seek medical treatment and to consult an attorney to determine possible legal remedies.

Furthermore, we note that the $7500 plaintiff received as consideration for the covenant not to sue was not a nominal or unconscionable amount as it was in other instances where a release was set aside. See *Florkiewicz v. Gonzalez* ($30 release for a skull fracture); *Reede v. Treat* (1965), 62 Ill. App. 2d 120, 210 N.E.2d 833 ($125 for a back injury); *Smith v. Borscheid* ($216.99 release for back injury).

Over the years a trend has developed to apply a doctrine of liberality with respect to setting aside settlement agreements which subsequently prove to be grossly unfair and unjust. (*Meyer v. Murray*, at 112; *Ruggles v. Selby*, at 12.) This development has progressed to the stage where it has recently been stated that the "trend is to set aside releases of personal injury claims in a situation where the facts, when finally known, present an unconscionable result," and that the question in these cases is simply "whether the result * * * is unconscionable." (*Florkiewicz v. Gonzalez*, at 120.) However, as this court observed in *Meyer v. Murray*, at page 112:

> "[T]his so-called liberal trend must exist in harmony with a policy of encouraging the settlement of personal injury claims and the forbearance of litigation entirely. [Citations.] It is especially important to maintain this latter principle in our progressively litigious society where cases are mounting in our overburdened courts. If a release or covenant is to be lightly disregarded, then the peaceful settlement of claims becomes realistically impossible. Prospective litigants cannot or will not negotiate settlements if the law will not give effect to their executed settlement of claims. [Citations.] It is perhaps for these reasons that public policy favors the peaceful and voluntary resolution of claims; where there appears to have been such a resolution by virtue of a release or covenant, a presumption of its validity is created. [Citations.]"

Plaintiff also argues that the statements made by casualty adjuster Hertko in the course of negotiations of the covenant not to sue were fraudulent as a matter of law. "[I]n order to entitle a releasor to avoid a release on the ground of fraud or of a false or fraudulent representation, he must show, in addition to the fact of a false representation, that such representation was made with knowledge of its falsity on the part of the party making it, or was recklessly uttered without regard to, or knowledge of, its truth, or would, by the exercise of ordinary diligence, have been known to be false; and it must also be shown that the releasor by action on the fraud or false representation suffered damage or injury." *Brackeen v. Milner* (1967), 88 Ill. App. 2d 50, 58, 232 N.E.2d 241.

■■ Plaintiff's allegations of fraud, as set forth in his affidavit, consist solely of the following:

"Your affiant further states that he made a claim against Starr Seestadt who owned the premises in which he resided as a tenant, and against Edward Juracka, the owner of the property immediately south. He was subsequently contacted by two different claims representatives from All State [sic] Insurance Company, one for each insured against whom a claim had been made: Mr. Hertka [sic] for Starr Seestadt and a Mr. Chad Geiger for Mr. Juracka. Your affiant states further that in October 1977 Mr. Hertko conducted negotiations to settle my claim against Starr Seestadt. He told me further not to talk to the other investigator, Mr. Geiger, representing the landlord next door until he had concluded his settlement with me. Mr. Hertko further stated that the owner next door was a real estate broker, and had high limits and was the one responsible for the accident. Your affiant further states that he was told by Mr. Hertko not to tell anyone what he had told to me because he could lose his job and that everything he told me was confidential. Upon these statements your affiant signed a covenant not to sue for $8,000.00[4] as to Starr Seestadt. Thereafter your affiant contacted the other adjuster, Mr. Chad Seiger [sic] who would only offer $3,000.00 and stated that I should take it or I would get nothing because Mr. Juracka was not responsible."

Assuming arguendo that Hertko made the above statements, plaintiff has not alleged or offered any proof that Hertko's statements concerning the limits of Juracka's liability insurance were false or fraudulent. Nor has plaintiff demonstrated their relevance to his claim against defendant Seestadt. In addition, we note that Hertko's alleged statement that Juracka was the one responsible for the accident cannot form the basis of plaintiff's claim of misrepresentation. A statement of a conclusion of law cannot form the basis of a claim of misrepresentation. (*Yuden v. Binkowski* (1971), 1 Ill. App. 3d 730, 274 N.E.2d 671 (abstract); *Scott v. Wilson* (1958), 15 Ill. App. 2d 456, 146 N.E.2d 397 (abstract).) In conjunction with the foregoing, we note that plaintiff does not allege that he failed to understand the meaning of the covenant not to sue, or that he was, in any way, misled as to its meaning.

The order granting defendant Seestadt's motion to dismiss is, therefore, affirmed.

Affirmed.

HARTMAN, P. J., and DOWNING, J., concur.

---

[4] $500 was paid to plaintiff's wife.