HENRY GUTIERREZ, JR., Plaintiff-Appellant, *v.* RONALD E. SCHULTZ, Defendant-Appellee.

Third District   No. 81—355

Opinion filed September 24, 1982.—Rehearing denied October 21, 1982.

BARRY, P. J., dissenting.

Louis F. Pignatelli, of Pignatelli, Pignatelli & Ripley, of Rock Falls, for appellant.

Richard M. Batcher, of Bozeman, Neighbour, Patton & Noe, of Moline, for appellee.

JUSTICE ALLOY delivered the opinion of the court:

Plaintiff Henry Gutierrez, Jr., appeals from the dismissal of his negligence complaint against defendant Ronald E. Schultz. Gutierrez had filed his action against Schultz as a result of injuries he had sustained when struck by a truck driven by Schultz in December 1978. After filing of the complaint, Schultz responded with a section 48 motion to dismiss (Ill. Rev. Stat. 1979, ch. 110, par. 48), asserting as an affirmative defense that the claim by Gutierrez had been released. Attached to the motion to dismiss was a copy of a draft, in the amount of $6,000, payable to Gutierrez from Allstate Insurance, and endorsed by Gutierrez. A hearing on the motion to dismiss was held, and at the conclusion of the hearing the court entered its order dismissing the complaint, with prejudice. On this appeal, plaintiff Gutierrez argues (1) that the court erred in not permitting parol evidence on the question of the intent of the parties with respect to the draft; (2) that the court erred in not permitting parol evidence on the question of the issues of fraud, misrepresentation, and mutual mistake in connection with the draft; and (3) that the court erred in concluding that the draft was, in fact, a release of the claims.

The record reveals that Gutierrez was injured in December 1978, while walking across a Sterling, Illinois, street. He was struck by a truck, driven by defendant Ronald Schultz. He later filed a negligence action against Schultz, alleging severe and permanent injuries and asking for damages of $15,000. Schultz responded with the filing of a section 48 motion to dismiss, alleging that Gutierrez had, on or about

November 15, 1979, accepted a draft from his insurer, Allstate Insurance Company, in the amount of $6,000, as a release of any and all claims arising from the prior accident. Attached to the motion was a copy of the draft, which stated on its face that it was "In payment of any and all claims including bodily injury arising from accident of 12-12-78 in Sterling, Illinois."

At the hearing on the motion to dismiss, plaintiff's counsel sought to introduce certain evidence relating to the circumstances surrounding the acceptance and negotiation of the Allstate draft. The court sustained the motion of defense counsel to exclude such evidence, premising its ruling upon the parol evidence rule and the failure of plaintiff to plead in avoidance of the affirmative defense prior to the hearing. An offer of proof was made. Plaintiff testified that while he was still in the hospital, after the accident, an Allstate adjuster visited him. The adjuster informed him that the company was concerned about the extent of his injuries and that he needn't worry, because they would take care of everything, including medical and hospital expenses, lost wages, and other damages, including replacement of glasses and clothing. The adjuster, according to the offer of proof, also told the plaintiff not to worry, that if he needed money, Allstate would advance it to him. When specifically asked if the adjuster offered to pay lost wages, Gutierrez indicated that he had. Gutierrez testified that the total lost wages as a result of the accident was $14,000. The medical bills, in total, amounted to about $2,500. Gutierrez continued the offer of proof, testifying that about two weeks before he received the draft, alleged to be a full and complete release, he had another conversation with the insurance adjuster. Gutierrez told the adjuster that he would settle for a fair deal, meaning lost wages, bills, and medical expenses. No agreement for a $6,000 settlement was arrived at during that visit, according to Gutierrez. Some two or three weeks after this conversation, Allstate sent Gutierrez a draft check for $6,000, which contained on its face, in normal size print, the following: "In payment of any and all claims including bodily injury arising from accident of 12-12-78 in Sterling, Illinois." Gutierrez testified that when he received the check and cashed it he did not believe that he was settling his claims. He indicated that he had informed the adjuster previously that he was not satisfied with their offer. Gutierrez testified that he felt the check was in partial payment only. Gutierrez also testified, on the offer of proof, that some two or three weeks after he got the draft check, he received a release form from Allstate for him to sign. He testified that he did not sign the release, but threw it in the garbage.

Immediately upon conclusion of the offer of proof, the court stated its opinion that the check was a release of all claims, including bodily injury, and that the plaintiff's endorsement of it estopped him from pursuing the negligence action. Although the court had sustained objections to the evidence concerning the circumstances surrounding the endorsement of the Allstate draft, it nevertheless stated its opinion that Allstate did not intend to perpetrate any fraud or advance any misrepresentation. The court also concluded that there was no mutual mistake of fact. The court then dismissed the complaint with prejudice. From that dismissal, Gutierrez appeals, arguing that the draft was not a release, and that the court erred in not permitting evidence relating to the circumstances surrounding its receipt and endorsement. We reverse and remand.

The rules with respect to releases and covenants not to sue have been repeatedly stated:

> "A release or a covenant not to sue, in essence, is the abandoning of a claim to the person against whom the claim exists, and where the release or covenant is executed with knowledge of its meaning, causes of action covered by the release or covenant are barred. (See *Ogren v. Graves* (1976), 39 Ill. App. 3d 620, 622, 350 N.E.2d 249.) Defenses which may be asserted to vitiate a release or covenant not to sue include fraud in the execution, fraud in the inducement, mutual mistake and mental incompetence. (*Blaylock v. Toledo, Peoria & Western R.R. Co.* (1976), 43 Ill. App. 3d 35, 37, 356 N.E.2d 639.) Once the defendant establishes the existence of the document, legal and binding on its face, the burden shifts to the plaintiff to prove it invalid by clear and convincing evidence. *Meyer v. Murray* (1979), 70 Ill. App. 3d 106, 111, 387 N.E.2d 878." (*McComb v. Seestadt* (1981), 93 Ill. App. 3d 705, 706, 417 N.E.2d 705.)

The court in *Meyer v. Murray* (1979), 70 Ill. App. 3d 106, 111, also noted:

> "The wording or form of the document, no matter how all-encompassing 'the language appears to be, will not preclude it from being set aside."

In *Willis v. Reum* (1978), 64 Ill. App. 3d 146, 147, 381 N.E.2d 46, the court noted:

> "In Illinois the words of a release will not prevent inquiry into the circumstances to ascertain whether the release was fairly made and accurately reflected the intentions of the parties [citations] and releases of personal injury claims may be set aside when there is a mutual mistake of fact and the circum-

stances, when finally known, present unconscionable results."
See *Newborn v. Hood* (1980), 86 Ill. App. 3d 784, 408 N.E.2d 275.

On the other hand, caution must be used when setting aside releases. As the First District reiterated in *McComb v. Seestadt* (1981), 93 Ill. App. 3d 705, 708:

" '[T]his so-called liberal trend must exist in harmony with a policy of encouraging the settlement of personal injury claims and the forbearance of litigation entirely. [Citations.] It is especially important to maintain this latter principle in our progressively litigious society where cases are mounting in our overburdened courts. If a release or covenant is to be lightly disregarded, then the peaceful settlement of claims becomes realistically impossible. Prospective litigants cannot or will not negotiate settlements if the law will not give effect to their executed settlement of claims. [Citations.] It is perhaps for these reasons that public policy favors the peaceful and voluntary resolution of claims; where there appears to have been such a resolution by virtue of a release or covenant, a presumption of its validity is created. [Citations.]' "

The threshold issue in the instant case is not whether the release should be set aside based upon fraud or mutual mistake, but whether there was a release at all. The plaintiff argues that the court erred in not considering his evidence concerning the circumstances leading up to and surrounding his endorsement of the check. Plaintiff's position is that this evidence indicated that it was not his intention, by endorsing and cashing the check, to release and fully settle his claim. He argues that the evidence in the offer of proof raised a question of fact on the issue of whether the parties intended the check to be a full and complete release. The insurer argues that the check on its face clearly and unambiguously evidences an intent to release and settle all claims arising from the accident. In so arguing, it concludes that the document is unequivocally a release and settlement of all claims and that any evidence to the contrary is impermissible. We disagree, and conclude that plaintiff's evidence ought to have been considered, since it was relevant to the issue of the intentions of the parties with respect to the check.

In *Gladinus v. Laughlin* (1977), 51 Ill. App. 3d 694, 366 N.E.2d 430, the court was confronted with clear words of release on the back of an endorsed check, which endorsement had been placed there by the plaintiff. Plaintiff had filed suit subsequent to cashing the check and the defendant pleaded the release as a bar to the action. The trial court agreed, and granted a motion to dismiss, based upon the re-

lease. On appeal, wherein that dismissal was reversed, the appellate court concluded that the words of general release were to be limited by specific references, in that case by reference to a code, on the face of the check, indicating payment for property damage only. (51 Ill. App. 3d 694, 696.) As another basis for reversal, the court noted:

"Illinois courts have uniformly held that the intention of the parties controls the scope and effect of the release; such intent is determined from the language of the instrument when read in light of the circumstances surrounding the transaction. [Citations.]" (51 Ill. App. 3d 694, 696.)

The court then examined the facts surrounding execution of the check and determined that the words of general release were not to be given effect. (51 Ill. App. 3d 694, 697.) Similarly, in *Florkiewicz v. Gonzalez* (1976), 38 Ill. App. 3d 115, 347 N.E.2d 401, the following language appeared on the back of a check endorsed and cashed by plaintiff, " 'Endorsement of this draft constitutes a release in full for account as stated herein.' " (38 Ill. App. 3d 115, 118.) In addressing the issue as to the effect of the words of release, the court stated:

"In determining whether the language on the reverse side of the check issued August 23, 1971, was a release of all parties, this court must look to rules of contract construction. We shall therefore consider the words used, the amount paid, the intention of the parties and the substance of the agreement. [Citation.]" 38 Ill. App. 3d 115, 118.

In those cases the language with respect to release, while general, was clear and direct, and it was on the reverse side of the check, where an endorser would be sure to notice it, before endorsing. In the instant case, the language on the check did not use the words *release, discharge, settle,* or even *payment in full.* Furthermore, the language of release ("In payment of any and all claims including bodily injury arising from accident of 12-12-78 in Sterling, Ill.") herein was in regular size print in the middle of the front of the check. We are not dealing in this case with a document entitled release and settlement, but rather with a document whose primary stated purpose and whose outward formal characteristics indicate that it is merely a check. Even assuming that the language used would be understood by the layman as a release and settlement, it would be inappropriate to assess that language divorced from the document as a whole, both its substantive and formal aspects. This document, except for the sentence with respect to what the payment was being made for, was in all other respects a check. We find it conceivable and reasonable, in light of the form of the document and the language used ("in payment of" with-

out clear mention of release, settle, or discharge), that plaintiff herein felt that the check he received was merely payment towards his claim, and not full payment evidencing a final settlement and release of his claim. The document, examined in its entirety, is equivocal as to the intentions of both parties with respect to its endorsement. In addition, the evidence of surrounding circumstances, which ought to have been considered on the issue of intentions, indicates that the insurance agent had represented that the company would take care of everything, including lost wages. It also indicates that plaintiff understood the check to be partial payment of his claim, and not final and complete payment. The evidence in the record, before us as a result of the offer of proof, raises a genuine issue of fact as to whether it was the intention of the parties that endorsement of the check would constitute a full and complete settlement of plaintiff's claim and be binding as a release of that claim.

Since a genuine issue of fact was raised as to whether the check document was a release, and since plaintiff had filed a jury demand, the motion to dismiss, based upon the release, ought to have been denied, without prejudice to the defendant's raising the release issue by way of answer. Ill. Rev. Stat. 1979, ch. 110, par. 48(3); *Denton Enterprises, Inc. v. State Toll Highway Authority* (1979), 77 Ill. App. 3d 495, 506, 396 N.E.2d 34; *Penington v. Jones* (1977), 46 Ill. App. 3d 65, 67, 360 N.E.2d 566.

Because we have determined that the motion to dismiss ought to have been denied as a result of the factual issue on the parties' intentions with respect to the check document, we need not reach the questions relating to fraud and mutual mistake, matters which would have the effect, if shown, of avoiding the release. We do note, for future reference of the parties, that such matters are required by section 43(4) of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 43(4)) to be set forth in the pleadings if a party will be relying upon them to avoid an assertion, made by way of pleadings, by the other party. Thus, if plaintiff is met with the affirmative defense of release by way of defendant's answer, it will be incumbent upon him to raise the fraud and mutual mistake grounds by appropriate pleading.

We reverse the dismissal of the complaint, having concluded that the motion to dismiss ought to have been denied, and remand for further procedure consistent with the views expressed in this opinion.

*Reversed and remanded, with directions.*

STOUDER, J., concurs.

PRESIDING JUSTICE BARRY, dissenting:

I respectfully dissent. Defendant filed a motion to dismiss plaintiff's complaint for personal injuries arising out of an accident in Sterling, Illinois, asserting in the motion plaintiff's release of all claims. At the hearing on the motion, plaintiff without having responded to the motion, merely argued that the purported "release" was "a mistake," thereby seeking to avoid the release. The trial court refused to admit evidence of the parties' intentions and ruled that plaintiff's claim is barred by his release. The majority opinion reviews the evidence contained in an offer of proof and concludes that there was a genuine issue of fact as to whether plaintiff intended his indorsement of the check to be a release of all claims. I disagree.

The $6,000 draft was filled out by a typewriter. The name of plaintiff as claimant was listed just below the name of defendant Schultz as insured. Just under plaintiff's name in the same size type, next to the words "In payment of," were the words "Any and all claims including bodily injury arising from accident of 12-12-78 in Sterling, Ill." I cannot believe that any reasonable person would interpret that statement to mean anything other than what it says; that the payment was intended to bar *all* personal injury claims of plaintiff arising out of *the* accident. A release is effective without the use of any particular form, and in the absence of any ambiguity, there is no cause for considering parole evidence as to the intention of the parties. In my view, there is no factual issue as to whether there was a release, and the trial court did not err in dismissing the complaint. I would affirm.